**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

*GLADYS PISARCZYK*
*Case Open*
*Supervi*

**20 CV 7628**

| | |
|---|---|
| **UNITED STATES SECURITIES AND EXCHANGE COMMISSION,** | Civil Action No. |
| **Plaintiff,** | Jury Trial Demanded |
| **v.** | |
| **ADAM P. ROGAS,** | |
| **Defendant,** | |
| **and** | |
| **NS8 FP, LLC, MVP 2020, LLC, AND ROGASSI ENTERPRISES, LLC** | |
| **Relief Defendants.** | |

## COMPLAINT

Plaintiff United States Securities and Exchange Commission ("SEC") alleges as follows:

## INTRODUCTION

1.      Beginning in at least 2018 and continuing through the summer of 2020, Defendant Adam P. Rogas ("Defendant" or "Rogas"), a founder and the former Chief Executive Officer ("CEO") of NS8, Inc. ("NS8"), a private technology company, defrauded NS8 investors in at least two securities offerings by falsifying NS8's bank statements to give the appearance that NS8 was generating millions of dollars in customer revenue with tens of millions of dollars of assets on hand. In fact, NS8 generated only a fraction of the revenue and had far less assets than what appeared in the doctored bank and financial statements provided to investors.

2.      Rogas provided these fraudulent bank and financial statements and other financial information derived from the fraudulent bank statements to investors and prospective investors in

at least two NS8 securities offerings, one that occurred between at least January and November 2019 ("2019 Offering"), and one that occurred between at least March and June 2020 ("2020 Offering"). Collectively, NS8 raised approximately $123 million in these two offerings as a result of Defendant Rogas's fraud, and Rogas pocketed at least $17.5 million of the investor funds.

3.      Rogas perpetrated the fraud against investors in both the 2019 and 2020 Offerings in the same manner. He falsified bank account statements for the account into which NS8's revenues were deposited and sent these falsified bank statements purporting to show revenue to NS8's finance department on a monthly basis where they were used to prepare NS8's financial statements. Rogas then used the false financial information in investor presentations and provided the false bank statements and financial statements to investors, making it appear as if NS8 had millions of additional dollars in revenue from its customers. At times, Defendant Rogas misrepresented NS8's total assets by tens of millions of dollars, including an over $60 million inflation of assets in June 2020.

4.      Rogas went to great lengths to conceal his deceptive conduct. Rogas ensured that he alone had access to the bank account in which NS8 customer funds were deposited. And even after being questioned about certain inconsistencies in NS8's bank statements by a consultant to potential investors in NS8's 2020 Offering, Rogas added even more phony transactions to NS8's already falsified bank statement in an effort to prevent his fraud from being discovered.

5.      Defendant Rogas's brazen, deceptive conduct continued even after the SEC had contacted NS8. In November 2019 and March 2020, the SEC staff issued subpoenas to Rogas in connection with an investigation into potential fraudulent conduct in a prior NS8 securities

offering. Despite these subpoenas, Rogas continued to alter bank statements until at least June 2020.

6.     From this fraud, Defendant Rogas received at least $17.5 million in ill-gotten gains and the Relief Defendants received illicit proceeds to which they have no legitimate claim.

7.     By engaging in this conduct, Defendant violated Section 17(a) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. § 77q(a), Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b), and Exchange Act Rule 10b-5, 17 C.F.R. § 240.10b-5. Unless restrained and enjoined, Defendant will continue to violate the federal securities laws.

8.     The SEC seeks, among other things, a permanent injunction against Defendant, disgorgement of all Defendant's and Relief Defendants' ill-gotten gains, together with prejudgment interest, and third-tier civil penalties against Defendant pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. §78u(d)(3)].

## **DEFENDANT**

9.     **Adam P. Rogas**, age 43, is a resident of Las Vegas, Nevada and is a founder and the former CEO of NS8. Between 2016 and September 1, 2020, Rogas served as the CEO of NS8.

## **RELIEF DEFENDANTS**

10.    **NS8 FP, LLC** is a Wyoming and/or Nevada limited-liability company associated with Rogas. In June 2020, NS8 FP received over $7.5 million in an equity redemption of NS8, Inc. shares.

11.     **2020 MVP, LLC** is a Nevada limited liability company. On July 17, 2020, Rogas

transferred the deed to his Las Vegas, Nevada residence to 2020 MVP, LLC through a nominal

grant deed transfer. Rogas previously purchased the property in February 2019.

12.     **Rogassi Enterprises, LLC** is a Nevada limited liability company formed by

Rogas in April 2009. Rogas is its manager. Rogas appears to hold title to at least two

automobiles through Rogassi Enterprises, LLC.

## <u>JURISDICTION AND VENUE</u>

13.     The Court has jurisdiction over this action pursuant to Sections 20(b), 20(d)(1),

and 22(a) of the Securities Act and Sections 21(d) and 27 of the Exchange Act, 15 U.S.C. §§

78u(d) and 78aa.

14.     The Court has personal jurisdiction over Defendant and Relief Defendants, and

venue is proper in this judicial district, because acts and transactions constituting violations of

the Securities Act and Exchange Act occurred in this district, including the offer and sale of

securities to one or more persons located in this district and the provision of false information to

at least one investor located in this district ("Investor B").

15.     In connection with the conduct alleged in this Complaint, Defendant, directly or

indirectly, singly or in concert with others, made use of the means or instrumentalities of

interstate commerce, the means and instruments of transportation or communication in interstate

commerce, or the mails, including soliciting investors located in various states, providing

falsified documents via email and electronic shared file platforms, and obtaining funds from

those investors through interstate commerce.

## FACTS

### I.     NS8 and Its Securities Offerings

16.     NS8 is a technology company founded by Rogas and three other individuals in 2016. NS8 offers fraud detection and prevention software to e-commerce merchants.

17.     NS8 has conducted at least three securities offerings since 2016.

18.     In 2017, NSB's securities offering raised $7.5 million from 10 accredited investors.

19.     NS8's 2019 securities offering (the "2019 Offering") raised over $49 million from at least ten accredited investors through the sale of Series A1 and A2 preferred stock pursuant to stock purchase agreements.

20.     NS8's 2020 securities offering (the "2020 Offering") raised approximately $73 million from at least 14 accredited investors through the sale of Series A1 preferred stock pursuant to stock purchase agreements.

### II.    Rogas Grossly Inflated NS8's Revenue by Falsifying Company Bank Account Statements.

21.     NS8 maintained at least two bank accounts, one NS8 account was located at Silicon Valley Bank ("SVB")  and another was at Bank of America. The account at SVB was used to pay NS8's business expenses and received some investor funds. Several NS8 employees had access to this account. The account at Bank of America was used to collect revenue from NS8's customers, including revenue received from customers through an e-commerce site ("Revenue Account"). Rogas, and Rogas alone, had access to the Revenue Account.

22.     Beginning no later than 2018, Rogas downloaded electronic copies of the Revenue Account statements and altered the text of those statements to grossly exaggerate the dollars paid by customers to NS8 and, in at least some instances, to alter the name of the payor.

5

The falsified bank account statements created by Rogas showed millions of dollars in phony revenue that, in reality, NS8 had not earned from customers.

23.     Rogas then provided the falsified bank statements to the NS8 finance department, which relied on them in preparing the company's financial statements. NS8's financial statements repeated the information in the falsified bank statements, and as a result, materially misstated the balance of the Revenue Account, NS8's revenue, and NS8's assets.

24.     The falsified bank statements and the false financial statements were then disseminated both internally at NS8 and externally, including to current and prospective investors. Rogas knew that the financial statements would be prepared in reliance on the falsified bank statements and, throughout his time as CEO of NS8, he personally prepared, reviewed, and distributed false financial statements.

25.     By June 2020, Rogas's fraud had led to the illusion that NS8 had over $62 million in the Revenue Account when, in fact, it had just over $28,000. A month-by-month summary of the inflated revenue from the falsified Revenue Account statements is below.

| Month | Actual Balance | Falsified Balance | Falsely Inflated Amount |
|---|---|---|---|
| Jan-18 | $101,189.80 | $1,138,353.63 | $1,037,163.83 |
| Feb-18 | $103,483.35 | $1,291,295.06 | $1,187,811.71 |
| Mar-18 | $77,823.09 | $1,444,413.21 | $1,366,590.12 |
| Apr-18 | $60,539.44 | $1,644,931.28 | $1,584,391.84 |
| May-18 | $63,864.84 | $1,925,578.12 | $1,861,713.28 |
| Jun-18 | $49,932.17 | $2,262,786.57 | $2,212,854.40 |
| Jul-18 | $51,052.84 | $2,690,807.00 | $2,639,754.16 |
| Aug-18 | $54,208.04 | $3,165,174.61 | $3,110,966.57 |
| Sep-18 | $56,635.29 | $3,730,668.41 | $3,674,033.12 |
| Oct-18 | $10,272.39 | $4,373,334.17 | $4,363,061.78 |

| Month | Actual Balance | Falsified Balance | Falsely Inflated Amount |
|---|---|---|---|
| Nov-18 | $1,869.86 | $5,136,414.04 | $5,134,544.18 |
| Dec-18 | $2,859,995.28 | $8,869,155.52 | $6,009,160.24 |
| Jan-19 | $4,076,163.35 | $15,145,101.78 | $11,068,938.43 |
| Feb-19 | $4,078,713.60 | $15,025,236.22 | $10,946,522.62 |
| Mar-19 | $3,925,343.94 | $15,787,765.08 | $11,862,421.14 |
| Apr-19 | $1,001,042.96 | $13,587,745.76 | $12,586,702.80 |
| May-19 | $1,004,558.83 | $14,993,052.97 | $13,988,494.14 |
| Jun-19 | $506,578.00 | $16,681,077.44 | $16,174,499.44 |
| Jul-19 | $12,284.67 | $17,479,624.51 | $17,467,339.84 |
| Aug-19 | $6,012.48 | $17,992,113.81 | $17,986,101.33 |
| Sep-19 | $5,636.10 | $23,745,307.13 | $23,739,671.03 |
| Oct-19 | $12,339.52 | $26,126,231.51 | $26,113,891.99 |
| Nov-19 | $22,726.71 | $29,150,181.27 | $29,127,454.56 |
| Dec-19 | $32,719.24 | $34,495,297.68 | $34,462,578.44 |
| Jan-20 | $39,005.42 | $38,149,825.57 | $38,110,820.15 |
| Feb-20 | $45,407.75 | $42,244,565.43 | $42,199,157.68 |
| Mar-20 | $52,983.78 | $46,945,839.43 | $46,892,855.65 |
| Apr-20 | $59,389.31 | $51,559,561.43 | $51,500,172.12 |
| May-20 | $70,363.81 | $56,193,852.43 | $56,123,488.62 |
| Jun-20 | $28,051.47 | $62,088,506.43 | $62,060,454.96 |

26.     As a result of Rogas's fraudulent conduct, each of the Revenue Account bank statements distributed to the finance department or externally to investors or prospective investors from January 2018 through June 2020 were false. As a result, each of the NS8 financial statements from 2018 to 2020 were also false and materially misstated, among other things, the balance of the Revenue Account, NS8's revenue, and NS8's assets.

**III.    Rogas Used The Falsified Bank Account Statements and False Financial Information to Solicit and Secure Millions of Dollars in Investments in NS8.**

27.    During the 2019 and 2020 Offerings, Rogas communicated directly with current and potential investors in NS8. Rogas used information derived from the falsified financial statements as well as the false financial statements and the false bank statements themselves to solicit investors in both offerings.

**A.    Investors Received The False Bank Statements.**

28.    The falsified bank statements were provided to at least one investor ("Investor A") during the course of its due diligence in connection with the 2019 Offering and to a group of investors including Investor A and an international investment firm with offices in Manhattan ("Investor B") in connection with the 2020 Offering.

29.    Investor A hired a consultant to assist it in diligence efforts in advance of purchasing NS8 securities in 2019. On November 15, 2019, the consultant requested "[m]onthly detailed bank statements and reconciliations for all accounts for the periods March 2019 through October 2019." A member of the NS8 finance department responded "[w]e have updated the [electronic shared file] … adding the additional [Revenue Account] Statements (sorry not sure how we missed that)." NS8 personnel had uploaded Rogas's falsified bank statements, and the consultant used the falsified bank statements to prepare a report for Investor A. The report addressed the quality of NS8's revenue, finding that NS8's revenue recognized was supported by actual cash receipts pursuant to the Revenue Account bank statements.

30.    After receiving the favorable due diligence report from its consultant, Investor A subsequently invested $24 million in NS8 securities in the 2019 Offering.

31.    Prior to the 2020 Offering, a group of investors including Investor A and Investor B engaged the same consultant to provide a diligence report. On March 9, 2020, Rogas provided

files to the consultant via an electronic shared file. These files included NS8's falsified bank statements for October 2019 through February 2020. The falsified bank statements – and documents derived from them – artificially inflated NS8's revenue by tens of millions of dollars.

32.     The consultant also asked to see the actual online statements for the Revenue Account during an in-person review. At the in-person review, Rogas showed the consultant the falsified bank statements.

33.     During the consultant's diligence review in March 2020, the consultant discovered that the line items in the August 2019 Revenue Account statement did not add up to the total balance reflected on that statement. In response to questions about it Rogas re-doctored the August 2019 Revenue Account bank statement to include an additional false deposit of $1 million, causing the line items to add up to the false total balance.

34.     In March 2020, the consultant prepared a report for the investors and found that NS8's revenue recognized was supported by actual cash receipts pursuant to the Revenue Account bank statements.

35.     The falsified bank statements grossly inflated NS8's Revenue Account balance, revenue, and assets. NS8's revenues and assets are material information that a reasonable investor would consider in making an investment decision, and the false revenues and asset values provided to Investor A and Investor B were material to their decisions to invest.

36.     After receiving the positive due diligence report from the consultant, in April 2020, Investor A invested an additional $25 million in NS8 securities in the 2020 Offering. Investor B also invested approximately $25 million in the 2020 Offering in addition to approximately $15 million it had invested in the 2019 Offering.

37.     Each of the falsified bank statements were false when provided to the prospective investors and Rogas knew or was reckless in not knowing, and should have known, that these bank statements were false and misleading.

**B.     Potential Investors In Both The 2019 And 2020 Offerings Were Provided With Materially Misstated Financial Statements Derived From The Falsified Bank Statements.**

38.     Balance sheets and other financial statements derived from the falsified bank account statements were made available to potential investors in the 2019 and 2020 Offerings via electronic shared files. An example of a falsified balance sheet appears below with the highlighted line item reflecting the falsified Revenue Account statement balances.

**NS8 Inc**
**Balance Sheet**
As of February 29, 2020

| | Jan 2020 | Feb 2020 |
|---|---|---|
| **ASSETS** | | |
| **Current Assets** | | |
| **Bank Accounts** | | |
| Bill.com Money In Clearing | 0.00 | 0.00 |
| Bill.com Money Out Clearing | 0.00 | 0.00 |
| BofA Checking | 38,149,825.57 | 42,244,565.43 |
| Income Account Balance | 0.00 | 0.00 |
| Total BofA Checking | $  38,149,825.57 | $  42,244,565.43 |
| Dutch BV COH | 571,652.37 | 571,652.37 |
| SVB (Checking) | 34,087,045.46 | 30,846,359.37 |
| TOTAL BUS CHK (        ) | 2,473.80 | 2,378.80 |
| **Total Bank Accounts** | $  72,810,997.20 | $  73,664,955.97 |
| **Other Current Assets** | | |
| Payroll Corrections | 0.00 | 0.00 |
| **Total Other Current Assets** | $            0.00 | $            0.00 |
| **Total Current Assets** | $  72,810,997.20 | $  73,664,955.97 |
| **Other Assets** | | |
| Security Deposits | | 0.00 |
| Las Vegas Office Deposit | 69,187.20 | 69,187.20 |
| **Total Security Deposits** | $       69,187.20 | $       69,187.20 |
| **Total Other Assets** | $       69,187.20 | $       69,187.20 |
| **TOTAL ASSETS** | $  72,880,184.40 | $  73,734,143.17 |

39.     Had this accurately reflected NS8's funds in the Revenue Account, it would have it would have stated that there was $39,005.42 and $45,407.75 in the Revenue Account in January and February 2020, respectively, not $38,149,825.57 and $42,244,565.43 as is falsely stated The financial statements provided to investors grossly inflated NS8's Revenue Account balance, revenue, and assets.

40.     Rogas also incorporated the false financial and revenue information into investor presentations he made using video conferencing. After viewing one of Rogas's investor presentations, Investor B invested approximately $15 million in the 2019 Offering.

41.     NS8's revenues and assets are material information that a reasonable investor would consider in making an investment decision, and the false revenues and asset values were material to reasonable investors.

42.     Each of the false financial statements and other false financial information provided to investors or prospective investors were false when provided to the investors or prospective investors and Rogas knew or was reckless in not knowing, and should have known, that these bank statements and financial statements were false and misleading.

**C.     Rogas Provided False Financial Information To Existing Investors.**

43.     Rogas also provided existing investors with the falsified revenue figures. For instance, in a January 14, 2019 email to an existing investor, Rogas attached an NS8 balance sheet with a line item for the falsified bank account that read "BofA Checking." This line item reflected falsified account balances of cash in the account for each month of 2018. For example, For example, it shows a balance of $2,262,786.57 in June 2018, matching the balance in the corresponding false Revenue Account, when the actual balance was $49,932.17.

**D.    NS8, Through Rogas, Offered And Sold Securities To Investor B Within The Southern District Of New York.**

44.    A partner of Investor B was in Manhattan when Investor B completed the documentation to purchase NS8 shares in September 2019.

45.    Further, in connection with the 2020 Offering, Rogas had further communications with Investor B while one or more of the partners was living and working in Manhattan.

**IV.    Rogas' Intentionally Falsified Material NS8 Financial Information And Provided It To Investors.**

46.    Each of the falsified bank statements or false financial statements prepared in reliance on those statements provided to investors or prospective investors were false when provided to the investors or prospective investors and Rogas knew or was reckless in not knowing, and should have known, that these bank statements and financial statements were false and misleading.

47.    The falsified bank statements and the false financial statement prepared in reliance on those statements were material to investors and prospective investors because, among other things, they reflected that NS8's products were selling well, that the company was collecting millions in revenue, and that the company had millions or tens of millions in cash with which it could continue its operations. In addition, the consultant's reports relying on those statements were important to Investor A's decision to invest millions into NS8 during the 2019 Offering and Investor A and Investor B's decision to invest millions into NS8 during the 2020 Offering.

48.    Rogas was the maker of the false and misleading statements to investors. As the CEO of NS8 and a key contact of current and potential investors, Rogas had ultimate authority over the falsified bank statements and financial statements, including the contents of those documents, and whether and how those documents were provided to investors and prospective

investors. Rogas was the only NS8 employee with access to the Revenue Account and he personally created the false bank statements. As a result, Rogas was also responsible for the content of the documents that were created in reliance on the false bank statements. Finally, Rogas provided both the false bank statements and the false financial statements to current and prospective investors.

**V.   Rogas's Fraudulent Conduct Continued Even After He and NS8 Received Subpoenas From The SEC.**

49.      In November 2019 and March 2020, the SEC issued subpoenas to Rogas and NS8.

50.      Despite being on notice that the SEC was investigating potential fraud at NS8, Rogas continued to alter bank statements, to provide falsified information to investors in the 2020 Offering, and to obtain over $17.5 million in those investors' proceeds.

**VI.      Rogas's Fraud was Discovered, and he Resigned from NS8.**

51.      In late August 2020, one of the employees in NS8's finance department discovered the true balance of funds in the Revenue Account and the falsified transactions were uncovered.

52.      Rogas resigned from NS8 on September 1, 2020.

**VII.      Rogas Received Ill-Gotten Gains as a Result of his Fraudulent Conduct.**

53.      Rogas received over $17.5 million as a result of the fraudulent conduct described above, $10 million personally and over $7.5 million to an entity associated with him.

54.      Rogas may also have misappropriated additional investor funds.

**VII.   Relief Defendants Received Proceeds from Defendant's Fraud to Which They Have No Legitimate Claim.**

55.     As alleged above, each of the Relief Defendants received proceeds from Defendant's fraud for which they provided no reciprocal goods or services, and to which they have no legitimate claim. As a result, those funds should be returned to defrauded investors.

## CLAIMS FOR RELIEF

### First Claim for Relief
### Section 17(a) of the Securities Act

56.     The SEC realleges and incorporates by reference the above paragraphs 1 through 55 as though fully set forth herein.

57.     Defendant, directly or indirectly, in the offer or sale of securities by the use of means or instruments of transportation or communication in interstate commerce or by use of the mails, acting with the requisite state of mind: (a) employed devices, schemes, or artifices to defraud; (b) obtained money or property by means of untrue statements of a material fact or by omitting to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaged in transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon the purchaser.

58.     By engaging in the conduct described above, Defendant violated, and unless restrained and enjoined will continue to violate, Section 17(a) of the Securities Act [15 U.S.C. §§ 77q(a)].

### Second Claim for Relief
### Section 10(b) and Rule 10b-5 of the Exchange Act

59.     The SEC realleges and incorporates by reference above paragraphs 1 through 58 as though fully set forth herein.

60.     Defendant, directly or indirectly, in connection with the purchase or sale of a security, and by the use of means or instrumentalities of interstate commerce, of the mails, or of the facilities of a national securities exchange, knowingly and severely recklessly:  (a) employed devices, schemes, or artifices to defraud; (b) made untrue statements of a material fact or omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon other persons.

61.     By engaging in the conduct described above, Defendant violated, and unless restrained and enjoined will continue to violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

### Third Claim for Relief
### Equitable Disgorgement

62.     The SEC realleges and incorporates by reference the above paragraphs 1 through 61 as though fully set forth herein.

63.     Defendant and each Relief Defendant received and holds proceeds of the fraud committed by the Defendant.

64.     Defendant and each Relief Defendant has no legitimate claim to these illicit proceeds, having obtained the funds under circumstances in which it is not just, equitable, or conscionable for it to retain the funds, and therefore each of them has been unjustly enriched.

### RELIEF REQUESTED

**WHEREFORE**, the SEC respectfully requests that this Court:

### I.

Find that the Defendant committed the violations alleged in this Complaint;

## II.

Enter an injunction, in a form consistent with Rule 65 of the Federal Rules of Civil Procedure, permanently restraining and enjoining Defendant and his agents, servants, employees, attorneys, and accountants, and those persons in active concert or participation with him, who receive actual notice of the Final Judgment by personal service or otherwise, and each of them, from engaging in transactions, acts, practices, and courses of business described herein, and from engaging in conduct of similar purport and object in violation of Section 17(a) of Securities Act [15 U.S.C. § 77q(a)], Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)], and Exchange Act Rule 10b-5 [17 C.F.R. § 240.10b-5] thereunder;

## III.

Order Defendant and the Relief Defendants to disgorge ill-gotten gains received during the period of violative conduct and pay prejudgment interest on such ill-gotten gains;

## IV.

Order Defendant to pay third-tier civil money penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)];

## V.

Grant such other and further relief as this Court may deem just and proper.

## JURY DEMAND

The SEC demands a trial by jury on all claims so triable.

16

Dated: September 14, 2020

Respectfully submitted,

Gregory A. Kasper
Polly Atkinson*
Attorney for Plaintiff
U.S. Securities and Exchange Commission
1961 Stout Street, Suite 1700
Denver, CO 80294-1961
(303) 844-1026
(303) 844-1046 (Atkinson)
KasperG@SEC.gov
AtkinsonP@SEC.gov

*Motion for *Pro Hac Vice* Pending