UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br><br>　　　　　　　　　　Plaintiff,<br><br>　　　　v.<br><br>ADAM P. ROGAS,<br><br>　　　　　　　　　　Defendant,<br><br>and<br><br>NS8 FP, LLC, MVP 2020, LLC, AND ROGASSI ENTERPRISES, LLC<br><br>　　　　　　　　　　Relief Defendants. | Civil Action No.　20-cv--7628 |

## DECLARATION OF ERIC DAY

　　I, ERIC DAY, do hereby declare under penalty of perjury, in accordance with 28 U.S.C. § 1746, that the following is true and correct, that I am over 18 years of age, and I am competent to testify to the matters stated herein:

　　1.　I am an attorney and have been licensed in Colorado since June 18, 2014. I am employed in the Division of Enforcement in the Denver Regional Office of the Securities and Exchange Commission and hold the title of Senior Counsel.

　　2.　Among other things, the federal securities laws authorize the SEC to conduct investigations to determine whether federal securities laws have been violated and to bring civil actions before the United States District Courts to enforce and secure compliance with those laws.

3. As part of my job duties, I am responsible for investigating potential violations of the federal securities laws.

4. In conducting factual investigations, my job responsibilities generally include sending subpoenas, taking sworn testimony, and conducting other investigative activities. I was assigned to investigate a matter captioned In the Matter of NS8, Inc. (D-03872). As a result of this investigation, among other things, the SEC has authorized this action seeking the relief specified in the Complaint and the SEC's Motion, which this Declaration supports.

## I. Overview of the SEC Investigation.

### A. November 2019 – August 2020.

5. On November 1, 2019, the SEC issued an Order Directing Private Investigation and Designating Officers to Take Testimony in the Matter of NS8, Inc. (D-03872), which authorized certain members of the SEC staff to subpoena documents and take investigative testimony.

6. As part of my investigation, I collected, reviewed, and analyzed information relating to, among other things, the offering of securities by NS8, Inc. ("NS8") and its executives, including Adam Rogas ("Rogas").

7. Among other things, this investigative work included reviewing public and non-public databases, including online secretary of state databases and the SEC's EDGAR filing system, issuing subpoenas to NS8, Rogas, and others in November 2019, December 2019, and March 2020. Through counsel, NS8 responded to these subpoenas by producing documents on behalf of itself, Rogas, and other NS8 employees. I reviewed certain of these documents, including financial information provided by NS8, the agreements, disclosures, and other data connected to NS8's Series A securities offerings ("the Deal Books"), and communications between investors and Rogas and others at NS8.

B.     **September 2020.**

8.     On September 2, 2020, outside counsel for NS8 contacted me and requested that we schedule a phone call. On September 3, 2020, I spoke to outside counsel for NS8 who informed me that Rogas had resigned from NS8 and stated that Rogas may have engaged in misconduct in connection with NS8's securities offerings.

9.     After that call, the SEC staff requested, received, and reviewed additional documents from NS8, from investors in NS8, and from a consultant hired by one investor. The SEC staff also interviewed two employees of NS8 and two investors.

10.    Based on the investigative work I have conducted throughout the investigation, I identified the facts below:

II.    **Background of Key Entities and Individuals.**

   A.   **NS8, Inc.**

11.    **NS8, Inc.** is a Delaware corporation with its principal place of business in Las Vegas, Nevada. NS8 was formed by Adam Rogas and others in August 2016. (Exhibit 1 – consolidated secretary of state information for key entities.)[1] NS8 is a technology company that provides online fraud detection and prevention services through various e-commerce platforms. In October 2019 and May 2020, NS8 filed Forms D with the Commission in connection with offerings of securities purportedly made under the exemption set forth in Rule 506(b) of Regulation D. (Exhibit 2 – consolidated Forms D).

   B.   **Defendant and Relief Defendants**

12.    **Adam Rogas** is a founder and the former chief executive officer of NS8. On September 1, 2020, Rogas resigned from NS8. (Exhibit 3 – redacted Rogas resignation letter.)

---

[1] Several exhibits to this Declaration have been excerpted and redacted. Upon request, the SEC will provide, under seal, complete copies of any and all exhibits cited.

Rogas is also an owner and member of NS8 FP, LLC, (*see* Exhibit 1 & Exhibit 18 – redacted email from Aug. 2019), and is the manager of Rogassi Enterprises, LLC (*see* Exhibit 1) and appears to be associated with 2020 MVP, LLC.  In June 2020, Rogas received $10,000,009 in an equity redemption of NS8, Inc. shares.  (Exhibit 4 – redacted table of redemption proceeds.)  Rogas holds at least two accounts at Silicon Valley Bank, through which he has received funds from NS8.  (Exhibit 19 – redacted Jan. 2019 bank statement showing transfers.)

13.   **NS8 FP, LLC** is a Wyoming limited liability company formed in August 2019.  (Exhibit 1.)  The entity is owned by Rogas.  (*See* Exhibit 18.)  In June 2020, NS8 FP, LLC received $7,542,450 in an equity redemption of NS8, Inc. shares.  (Exhibit 4.)  NS8 FP, LLC holds an account at Wells Fargo Bank, through which it received funds in connection with the June 2020 equity redemption.  (Exhibit 18).

14.   **2020 MVP, LLC** is a Nevada limited liability company.  (Exhibit 1.)  It appears that on July 17, 2020, Rogas transferred ownership of his Las Vegas, Nevada residence to 2020 MVP, LLC through a nominal grant deed transfer.

15.   **Rogassi Enterprises, LLC** is a Nevada limited-liability company formed by Rogas in April 2009.  Rogas is its manager.  (Exhibit 1.)  Rogas appears to hold title to at least two vehicles through Rogassi Enterprises, LLC, a 2020 Audi S8 sedan and a 2018 Audi S5 Prestige sedan.

   C.   **Investors and Consultant.**

16.   **Investor A** is a venture capital firm with offices in California.  My review of the Deal Books produced by NS8 show that entities associated with Investor A invested $24,149,994.91 in the 2019 Offering and $24,999,986.10 in the 2020 Offering.  (*See* Exhibits 5 & 6 – Redacted Schedule of Purchasers for the 2019 and 2020 Offerings.)

17.     **Investor B** is an international investment firm with offices in Manhattan.  My review of the Deal Books produced by NS8 show that entities affiliated with Investor B invested $14,999,995.43 in the 2019 Offering and $7,499,997.71 in the 2020 Offering.  (*See* Exhibits 5 & 6.)

18.     **Consultant** is a global consulting firm that Investor A hired to assist with diligence efforts in advance of purchasing NS8 securities in 2019 and a group of investors, including both Investor A and Investor B, hired Consultant to assist in their diligence efforts in advance of purchasing NS8 securities in 2020.  (*See* Exhibits 12 & 15 – redacted excerpts of Consultant's draft Dec. 2019 and Mar. 2020 reports to investors.)

### III.     NS8's 2019 And 2020 Securities Offerings.

19.     In the fall of 2019, NS8 engaged in a securities offering ("2019 Offering").  The 2019 Offering raised over $49 million in proceeds through the sale of Series A preferred stock to at least ten investors.  (Exhibit 5.)

20.     In the spring of 2020, NS8 engaged in another securities offering ("2020 Offering").  The 2020 Offering raised over $73 million through the sale of Series A preferred stock to at least fifteen investors.  (Exhibit 6.)

### IV.     Rogas Falsified NS8's Bank Statements.

21.     NS8 maintained an account at Silicon Valley Bank that was used to pay NS8's business expenses and received some investor funds. (*See* Exhibit 7 – redacted excerpt of June 2020 bank statement.)  Several NS8 employees had access to this account.  NS8 also maintained an account at Bank of America, which was used to collect revenue from NS8's customers (the "Revenue Account").  (*See* Exhibit 8 – redacted excerpt of January 2020 bank statement.)

22. I interviewed two employees from NS8's finance department who explained that they understood that Rogas was the only person with online login credentials for the Revenue Account or access to its monthly statements.

23. According to these employees, Rogas would download the Revenue Account monthly bank statements and would then provide them to the finance department. The finance department then relied on those Revenue Account statements in preparing the company's financial statements. The statements, and summary materials derived therefrom, provided by Rogas were the statements that NS8's finance department used until September 2020.

24. These employees further explained that in late August 2020, in an attempt to get additional login credentials, one employee in the finance department learned the balance in the Revenue Account was more than $60 million lower than the Revenue Account statements that he had access to showed.

25. On September 4, 2020, NS8 produced to the SEC staff two copies of the Revenue Account statements: a set of actual statements that were obtained by NS8 from Bank of America (the "Actual Statements"), and statements that NS8's finance department had obtained from Rogas and had been using to prepare NS8's financial statements.

26. I reviewed and compared the actual statements to the statements being used by NS8. For the time period January 2018 through July 2020, the account balances in the Revenue Account were overstated every month in the set of statements provided by Rogas ("the False Statements"). A summary of my findings after reviewing the monthly balances of the Actual versus False Statements is provided as Exhibit 9.

27. I also reviewed and compared certain line items on the Actual and False Statements. That review showed that the False Statements included altered line items of dollar amounts

(which were overstated) and, in some cases, altered payor names and details. A redacted example of the changes that I observed in the January 2020 Actual and False Statements is attached as Exhibit 10.

### V. The False Statements Were Provided To Investors In The 2019 And 2020 Offerings.

28. I have reviewed emails that Rogas and others at NS8 sent to current and potential investors in the 2019 and 2020 Offerings, including Investor A, Investor B, and Consultant. These emails show that NS8 provided financial information to current and potential investors via email and Dropbox, an electronic file sharing system.

29. In connection with Investor A's investment in the 2019 Offering, on November 15, 2019, Consultant requested from NS8 "[m]onthly detailed bank statements and reconciliations for all accounts for the periods March 2019 through October 2019." (Exhibit 20 – redacted Nov. 2019 email correspondence.) A member of the NS8 finance department responded, "[w]e have updated the [electronic shared file] . . . adding the additional [Revenue Account] Statements (sorry not sure how we missed that)." (Exhibit 11 – redacted Nov. 2019 email correspondence.)

30. As explained above, based on our interviews with NS8 finance employees, I understand that at this time, NS8's finance department did not have access to the Actual Statements of the Revenue account, and was referring to the False Statements. Therefore, Consultant was provided with the False Statements and used those False Statements to prepare a report for Investor A. (*See* Exhibit 12 – redacted excerpts of Dec. 3, 2019 draft report.)

31. Consultant's 2019 report addressed the quality of NS8's revenue, finding that NS8's revenue recognized was supported by actual cash receipts pursuant to the Revenue Account bank statements. (*See id*. at 3.)

32. In connection with the 2020 Offering, a group of investors, including Investor A and Investor B, again retained Consultant to provide updated due diligence. (*See* Exhibit 13 at 8 – redacted March 2020 email correspondence and attached "Vegas Q&A Agenda".) Again, Consultant was provided with the False Statements. (*See id*. at 5-6 (Rogas stating that he is providing bank statements via Dropbox).)

33. Upon reviewing the False Statements, Consultant noticed a discrepancy between the August 2019 statements, asking "[w]hy do the Aug19 [Revenue Account] bank statement deposits not subtotal within the bank statements? The individual line items add up to $2.3M in deposits while the total deposits presented is $3.3M." (*See* Exhibit 13 at 14 para (g).)

34. Rogas claimed that he "re-pulled the statements from Aug through Feb for my own sanity." (*See* Exhibit 14 at 3.) The "new" statement added up to $3.3M (*see id*. at 1-2).

35. Upon receiving this "new" information, one NS8 finance department employee wrote to Rogas:

> Wow – on the previous downloaded statement in the old diligence files there is a transaction: Old: 08/28/19 Transfer … = $6.45
> Current:  08/28/19 Transfer … = $999,999.99
> **Variance = $999,999.99 - $6.45 = $999,993.54**
> The old statement has an incorrect line item, but the correct total…
> that is crazy! (*Id*. at 1.)

36. Consultant also asked to see the actual online statements for the Revenue Account during an in-person review. (*See* Exhibit 13 at 6, para. 7.)

37. Based on our interview of one of NS8's finance department employees, I understand that during that in-person review, which the employee attended, Rogas provided the False Statements to an employee of Consultant.

38. Based on its review of the information provided by NS8, including the False Statements, Consultant provided an updated report, a draft of which is dated March 12, 2020.

(Exhibit 15.)  This report also addressed the quality of NS8's revenue, finding that NS8's recognized revenue was supported by actual cash receipts pursuant to the Revenue Account bank statements.  (*See id*. at 3-4.)

39. After receiving information in the report, Investor A invested approximately $25 million.  Investor B invested approximately $7.5 million in the 2020 Offering in addition to the nearly $15 million it had invested in the 2019 Offering.  (*See* Exhibits 5 & 6.)

### VI. Other False Financial Information Was Provided To Investors In The 2019 And 2020 Offerings.

40. On September 10, 2020, the staff had a conversation with counsel for NS8 during which counsel explained that balance sheets and other financial statements derived from the False Statements were made available to potential investors in the 2019 and 2020 Offerings through an electronic file sharing system.

41. NS8 produced the documents within the electronic file sharing system to the SEC staff.  An example of a falsified balance sheet for January and February of 2020, which was within the file titled "NS8 Inc - Balance Sheet - 2020 by Month," is provided as Exhibit 16 (redacted excerpt).

42. I have reviewed and compared the information in Exhibit 9 with Exhibit 16 and have determined that if the information in the balance sheet had accurately reflected NS8's funds in the Revenue Account, it would have stated that there was $39,005.42 and $45,407.75 in the Revenue Account in January and February 2020, respectively, not $38,149,825.57 and $42,244,565.43 as is falsely stated in Exhibit 16.

43. In a January 14, 2019 email to an existing investor, Rogas attached an NS8 balance sheet with a line item for the falsified bank account that read "BofA Checking."  (Exhibit 17 – redacted email correspondence.)  I have reviewed and compared the information in Exhibit 9

with the balance sheet in Exhibit 17. The line item on the Balance Sheet reflects falsely inflated balances, which in some instances match the False Statement account balances. For example, it shows a balance of $2,262,786.57 in June 2018, matching the balance in the corresponding False Statement, when the actual balance was $49,932.17.

**VII.    NS8, Through Rogas, Offered And Sold Securities To Investor B Within The Southern District Of New York.**

44.    The SEC staff interviewed a partner of Investor B. Based on that interview, I understand that the partner of Investor B was in Manhattan when Investor B completed the documentation to purchase NS8 shares in September 2019.

45.    Further, based on that interview, I understand that in connection with the 2020 Offering, Rogas had further communications with Investor B while one or more of the partners was living and working in Manhattan.

**VIII.    Rogas Received Over $17.5 Million From The 2020 Offering.**

46.    In June 2020, the redemption anticipated in the 2020 offering documents occurred. In connection with the redemption, Rogas received $10,000,009 personally and $7,542,450 through NS8 FP, LLC. (*See* Exhibit 4.)

47.    Rogas is currently represented by William M. Sullivan, Jr. and Thomas Hill of Pillsbury Winthrop Shaw Pittman LLP. (*See* Exhibit 3.)

I certify under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Dated: September 14, 2020

_____
Eric Day