

UNITED STATES
SECURITIES AND EXCHANGE COMMISSION
BYRON G. ROGERS FEDERAL BUILDING, 1961 STOUT ST., SUITE 1700
DENVER, CO 80294-1961

DENVER
REGIONAL OFFICE

February 14, 2023

**VIA ECF**
The Honorable Paul A. Crotty
United States District Judge
Southern District of New York
500 Pearl Street, Courtroom 14C
New York, NY 10007

Re:   *SEC v. Rogas, et al., Case No. 20-cv-7628 (PAC)*

Dear Judge Crotty:

Plaintiff United States Securities and Exchange Commission ("SEC") respectfully writes to request that this Court order Defendant Adam Rogas to supplement his January 12, 2023 accounting (the "January 12 Accounting") to comply with this Court's December 19, 2022 order (the "December 19 Repatriation Order"). In its December 19 Repatriation Order, the Court ordered Mr. Rogas to liquidate certain crypto assets—specifically 75 NFTs that Mr. Rogas identified in a November 18, 2022 declaration (the "November 18 Declaration")—and transfer the proceeds in United States dollars to the registry of the Court. The 75 crypto assets listed in the November 18 Declaration purportedly represented "all remaining crypto assets held that were purchased with the approximately $1,200,000 in funds" Mr. Rogas received from Silicon Valley Bank ("SVB") in March 2021. Doc. No. 82, Ex. 1 at ¶ 3.

The Court's order required that Mr. Rogas sell the NFTs in an "auditable and verifiable" manner. It required him to provide—for each NFT sold—"(1) the date each Asset was purchased, (2) the date each Asset was sold, (3) the amount for which each Asset was purchased and sold, (4) and the complete details of the transactions involving the funds from the sale of each Asset, from the initial deposit of those funds into an account or crypto wallet to the ultimate deposit of those funds into the registry of the Court."

Mr. Rogas' January 12 Accounting does not comply with the Court's December 19 Repatriation Order in a number of ways. Mostly importantly, it does not provide end-to-end accounting sufficient to trace the flow of funds "from the initial deposit" into Mr. Rogas' Coinbase account, to the purchase of NFTs, to the ultimate sale of NFTs and "deposit of those

funds into the registry of the Court."[1]  Accordingly, it is impossible to confirm whether the NFTs Mr. Rogas sold represents **all** the crypto assets Mr. Rogas purchased with the $1.2 million he received, a **subset**, or an **entirely different group** of crypto assets.  The SEC requests that the Court order Mr. Rogas comply with its December 19 Repatriation Order —specifically to provide an end-to-end accounting for the entire $1.2 million he received from SVB.

   a. **Mr. Rogas' January 12 Accounting does not provide sufficient information to confirm that the NFTs he sold represent all the assets he purchased with SVB's $1.2 million.**

The January 12 Accounting (attached to this letter as Exhibit 1) states that Mr. Rogas sold a total of 319 NFTs for 100.3 Ethereum tokens ("ETH"), and that Mr. Rogas converted the 100.3 ETH—along with approximately 38.25 ETH already in his Coinbase account—into a total of $182,659.96.[2]  As documentation, the January 12 Accounting attaches a Rogas-created spreadsheet categorizing sales of 30 of the NFTs, some sales transaction details for certain of the 319 NFTs, and a Rogas-created list of 289 NFTs that Mr. Rogas claims he sold in bulk.

For the vast majority of the 319 NFTs, Mr. Rogas has provided no "auditable and verifiable" documentation of their purchase or sale.  For 30 of the NFTs, Mr. Rogas created a spreadsheet purporting to show purchase and sale price.  As backup, Mr. Rogas attached transaction details purporting to show sales details of the 30 NFTs—although the transaction details do not match Mr. Rogas' self-created spreadsheet.  According to his counsel, that is because the transaction details actually show "larger sale[s] coordinated and aggregated digitally by the marketplace."  Accordingly, the transaction details are not sufficient to verify Mr. Rogas' self-created spreadsheet.  And for the remaining 289 NFTs, Mr. Rogas merely provided another self-created spreadsheet showing sale price only—again, not "auditable" or "verifiable."

Most importantly, Mr. Rogas has not provided **for a single NFT** sufficient documentation to trace the flow of funds "from the initial deposit" into Mr. Rogas' Coinbase account to the ultimate "deposit of those funds into the registry of the Court."  Counsel for Mr. Rogas represented in email communication that "Mr. Rogas has provided the information and documentation within his possession and that he has been able to access."  This is inconsistent with Mr. Rogas' prior representations, in which he specifically confirmed (to this Court) that he

> is … prepared to, and upon this Court's order will, provide a sworn accounting of the liquidation of the crypto assets, including (1) the date each asset was purchased, (2) the date each asset was sold, (3) the amount for which each asset was purchased and sold, (4) and the complete details of the transactions involving the funds received from the sale of

---

[1] The funds were ultimately transferred to SVB, not the Court's registry.  Mr. Rogas claimed he was "unable to directly transfer funds from my Coinbase account to the Court's registry," although this is contrary to information provided by counsel for Coinbase.

[2] This represents approximately 15% of the money Mr. Rogas received from SVB in March 2021.

> each asset, from the initial deposit of those funds into an account or crypto wallet to the ultimate deposit of those funds into the registry of the Court.

Doc. No. 82 at ¶ 6. Mr. Rogas has simply not complied with the Court's December 19 Repatriation Order, despite previously representing he was prepared to do so and would. As a direct result, the SEC is not able to confirm whether the NFTs Mr. Rogas sold represents all the crypto assets Mr. Rogas purchased with the $1.2 million he received from SVB.

### b. Numerous other inconsistencies in Mr. Rogas' November and January declarations call into question the veracity of his statements.

In the November 18 Declaration (Doc. No. 82, Ex. 1), Mr. Rogas told the court that 75 NFTs identified in his declaration represented "all remaining crypto assets held that were purchased with the approximately $1,200,000 in funds." Less than two months later he sold 319 NFTs, which purportedly represented "the remaining crypto assets . . . within my possession." Given the information provided, the SEC is unable to determine which—if either—of these statements is accurate.[3]

In his declaration, Mr. Rogas also states that in addition to the funds generated from the sale of 319 NFTs, he also transferred proceeds generated from "liquidating NFTs in September 2022"—more than three months before the Court authorized him to sell any digital assets. This raises a number of questions, and further underscores the need for Mr. Rogas to comply with the Court's December 19 Repatriation Order and provide a full end-to-end accounting of how the $1.2 million that he initially received relates to the NFTs recently sold.

In sum, the many questions surrounding Mr. Rogas' transactions in NFTs make it even more important that he submit an accounting that complies with the Court's December 19 Repatriation Order. The SEC respectfully requests the Court order Mr. Rogas to provide one.

---

[3] When asked about the discrepancy, counsel for Mr. Rogas stated that it was "entirely the result of NFTs—many with little or no value—being air-dropped into his private wallet or created as a derivative of the 75 NFTs identified in Mr. Rogas' prior affidavit." Nevertheless, Mr. Rogas has not provided any independent documentation or confirmation of such "air dropping" of NFTs into his possession.

Respectfully submitted,

*s/ John Dwyer*
John Dwyer
Zachary T. Carlyle
Nicholas P. Heinke
Gregory A. Kasper
U.S. Securities and Exchange Commission
1961 Stout Street, Suite 1700
Denver, CO 80294-1961
(303) 844-1024 (Dwyer)
DwyerJ@sec.gov; CarlyleT@sec.gov
HeinkeN@sec.gov, KasperG@SEC.gov
*Counsel for U.S. Securities and Exchange Commission*

**Certificate of Service**

      I hereby certify that on February 14, 2023, the document above was served via ECF on those listed below:

William M. Sullivan, Jr.
Pillsbury Winthrop Shaw Pittman LLP
1200 Seventeenth Street NW
Washington, DC 20036-3006
Email: wsullivan@pillsburylaw.com

*Counsel for Defendants Adam P. Rogas, NS8 FP, LLC, MVP 2020, LLC, and Rogassi Enterprises, LLC*

John Murphy
Maureen P. Reid
John Murphy & Associates, P.C.
171 Madison Avenue, Suite 305
New York, NY 10016
(646) 862-2012
jmurphy@johnmurphylaw.com
mreid@johnmurphylaw.com

Otto K. Hilbert, III
Otto Law
535 16th Street, No. 810
Denver, CO 80202
(303) 324-3748
otto@otto.law

*Counsel for Defendant Paul G. Korol*

                                                **s/ *John Dwyer***