UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

UNITED STATES SECURITIES AND
EXCHANGE COMMISSION,

            *Plaintiff,*

           v.

ADAM P. ROGAS and PAUL G. KOROL,

           *Defendants,*

           and

NS8 FP, LLC, MVP 2020, LLC, and
ROGASSI ENTERPRISES, LLC,

           *Relief Defendants.*

------------------------------------------------------------X

**DECISION & ORDER**

20-cv-7628 (PAC)

Defendants Paul G. Korol and Adam P. Rogas are former executives of NS8, Inc. ("NS8"). *See* Am. Compl. ¶¶ 12–13, ECF No. 79. Relief Defendants NS8 FP, LLC ("NS8 FP"), MVP 2020, LLC, and Rogassi Enterprises, LLC are companies "associated with" Rogas that allegedly received fraudulent proceeds or hold title to Rogas's property. *Id.* ¶¶ 14–16. Plaintiff, the U.S. Securities and Exchange Commission ("SEC"), alleges that from at least 2018 to 2020, Rogas, among other things, altered bank account statements "to grossly exaggerate the dollars paid by customers to NS8." Rogas also provided financial information to the NS8 finance department who relied on the falsified financial information "in preparing the company's financial statements." *Id.* ¶¶ 28–29. The financial statements were disseminated "to current and prospective investors."[1] *Id.* ¶¶ 29–30,

---

[1] On March 16, 2022, Rogas pleaded guilty to securities fraud crimes in violation of 15 U.S.C. § 78j(b) & 78ff, 17 C.F.R. § 240.10b–5, and 18 U.S.C. § 2 pursuant to a plea agreement, dated March 15, 2022, with the United States Attorney's Office. *See United States v. Rogas*, No. 20-cr-539, Tr.

1

93, 97, 103, 114.

The SEC alleges that "Korol participated in and helped perpetrate Rogas's fraud." *Id.* ¶ 5. Korol is alleged to have "solicited numerous potential investors for NS8," "assisted in a secondary offering between two NS8 investors," and "devised a scheme for Korol to offload his shares in NS8 in a transaction funded by a third-party investor." *Id.* ¶¶ 5–6. Korol is alleged to have taken these actions knowing "that the revenue numbers used by NS8 and provided to investors were falsified." *Id.* ¶¶ 5, 76–87.

The SEC also alleges that Korol is liable under the securities laws for his fraudulent conduct and for "aiding and abetting" Rogas's fraudulent activities. *Id.* ¶¶ 131–33, 137–39, 140–45.

Korol has moved to dismiss the complaint against him pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b). For the following reasons, the Court denies all of Korol's claims.[2]

---

2:13–22, ECF No. 77. On November 3, 2022, Rogas was "remanded to the custody of the Bureau of Prisons for 60 months' imprisonment to be followed by three years of supervised release." *Id.* Tr. 78:7–14, ECF No. 81. Rogas was also ordered to forfeit his "interest in the following property to the United States: $17,542,459." *Id.* Filed Judgment, ECF No. 80.

Rogas and the Relief Defendants confirmed that they have reached a "settlement in principle" in the instant civil case except apparently to one issue. *Rogas*, No. 20-cv-7628, Joint Letter, ECF No. 142. As of the date of this Order, the parties have agreed "to continue the settlement conference discussions" to resolve the open issue. *Id.* Joint Letter Mot. ¶ 4, ECF No. 157.

[2] **Any issues or arguments raised by the parties but not specifically addressed in this Decision & Order have been considered by the Court and rejected.**

I. **Background**

The Company (NS8) and the Alleged Fraudulent Scheme

NS8, founded in 2016, was a technology company that "offered fraud detection and prevention software to e-commerce merchants." *Id.* ¶ 20. Rogas was NS8's Chief Executive Officer from 2016 to September 1, 2020. *Id.* ¶ 12. Korol was NS8's Chief Customer Officer. *Id.* ¶ 13. Korol also served on the Board of Directors and "purchased 1,693,125 shares of the company for $0.0001/share, or $169.31 total" at the time of the company's founding. *Id.* He "sold most of those shares . . . for proceeds of $6,221,182.17" in August 2019. *Id.* ¶ 13.

Beginning in 2018, Rogas "downloaded electronic copies" of account statements "used to collect revenue from NS8's customers," and he "altered the text of those statements to grossly exaggerate the dollars paid by customers to NS8." *Id.* ¶¶ 27–28. "Rogas then provided the falsified bank statements to the NS8 finance department, which relied on them in preparing the company's financial statements." *Id.* ¶ 29. NS8's financial statements "materially misstated the balance of the Revenue Account, NS8's revenue, and NS8's assets." *Id.* Rogas also provided the incorrect financial statements "to investors and prospective investors." *Id.* ¶ 2.

Korol's Alleged Participation in and Awareness of the Fraud

Korol attended an "All Hands" meeting in September 2018 where Rogas "presented financial information" to NS8 employees and "[a]t least one potential investor." Am. Compl. ¶¶ 77–78. Rogas displayed a "slide showing that NS8 had more than 1,500 paying customers and $9.8 million in annual recurring revenues." *Id.* ¶ 78. **"These numbers were significantly inflated."** *Id.* (emphasis added). Following the meeting, "another NS8 employee raised concerns with Korol, including that the employee did not know where Rogas's numbers were coming from

3

and that Rogas's presentation seemed implausible." *Id.* ¶ 79.

The SEC also alleges, among other things, that messages between Korol and Rogas demonstrate Korol's culpability, as follows:

- On October 3, 2018, Korol messaged Rogas the following: "What little money is left we might as well not flush it[.] Anyway they can do what they want[.] I don't care[.] I know it's all about spending as much as we can to look like a 9.8 arr [annual recurring revenue] company [expletives]." *Id.* ¶ 80.

- On November 2, 2018, Korol messaged Rogas: "The other side of this is [another NS8 employee] is only now getting real data about how bad these guys [NS8] are doing[.] [Expletive] moron[.] I get it he's here for one reason because we had to hide shit[.] Otherwise he [sic] horrid[.]" *Id.* ¶ 81.

- On November 14 and 18, 2018, Korol and Rogas discussed "NS8's expenses" and the "mere[] $100,000 in NS8's Revenue Account." *Id.* ¶¶ 82–83. Korol messaged Rogas on November 18 and said certain employees "don't know what our numbers are" and that **"We need revenue."** *Id.* ¶ 84 (emphasis added).

- On December 5, 2018, Korol texted Rogas about an investor being "all over the numbers" and "called bull[expletive] the growth is to [sic] perfect they [sic] line is smooth." *Id.* ¶ 85. Rogas replied "we are ok." Korol said "They literally might go after our text" and asked "Can u erase everything." *Id.*

- On January 22, 2019, Korol messaged Rogas that **"everybody that [has] been around [sic] for awhile [sic] knows our revenues are not correct"** "Everybody." *Id.* ¶ 86 (emphasis added). Rogas stated "I know that." *Id.*

<u>Korol Introduces Investors to Rogas and NS8</u>

"Korol solicited numerous potential investors, who he then introduced to Rogas, who provided them with falsified revenue information." *Id.* ¶ 90. Korol connected Potential Investors A, B, and C to Rogas, and said to Rogas that "they all love me." *Id.* ¶¶ 90–92. "Rogas had a virtual meeting with Potential Investor A and, following the meeting, provided a slide deck that included falsified revenue numbers." *Id.* ¶ 96. Korol emailed Potential Investors B and C and copied Rogas, stating that Rogas "can provide any additional information or documentation that you will need to continue the conversation." *Id.* ¶¶ 94–95. Rogas emailed Potential Investors B

4

and C "a slide deck that included falsified revenue numbers." *Id.* In March of 2019, "Korol introduced Potential Investor D to Rogas." *Id.* ¶ 97. He stated that Rogas was "spearheading [NS8's] funding efforts." *Id.* Rogas also "emailed a slide deck that included falsified revenue numbers." *Id.*

### Early Investors Sell their NS8 Securities

In the summer of 2019, individuals who invested in NS8 in 2016 and 2017 ("Early Investors") "told Korol that they were interested in selling their shares." *Id.* ¶¶ 100–01. "Korol worked with Rogas to conduct a secondary offering whereby the Early Investors sold their shares to another third-party investor." *Id.* ¶ 101. The Early Investors received a "significantly inflated" price. *Id.* ¶ 103. "Korol knew or was reckless in not knowing, and should have known, **that this price was significantly inflated.**" *Id.* (emphasis added). Korol told Rogas "I'm not going to be on the Thursday investor update. I don't want to know the numbers that are being given." *Id.* ¶ 102. Rogas stated: "Your [sic] on that list because of [the Early Investors]" "And knowing what they are getting" "So your [sic] not in the dark." *Id.*

After an NS8 employee "raised concerns internally that NS8 was overstating its number of paying customers," Rogas "remove[d] the Employee's access to NS8's IT systems" and "revoked" the "Employee's building access." *Id.* ¶¶ 57, 62, 65. On or about August 15, 2019, the Employee's supervisor fired him at Rogas's "direction." *Id.* ¶ 70. "Korol was with the Employee when he received the call . . . ." *Id.* ¶ 118. Korol "encouraged the Employee not to disclose any information that would be harmful to NS8 or Rogas." *Id.* ¶ 119. He then texted Rogas, "I've had a great convo with [the Employee] explained what an [expletive] move he did let['s] talk about it [sic][.]" "[The Employee] understands now[.]" "I taught him a lesson tonight on what you can do and not." *Id.*

Korol Sells his NS8 Securities

"Korol asked Rogas on multiple occasions," beginning in late 2018, "to find an investor to purchase Korol's NS8 shares." *Id.* ¶ 105. Korol also requested that he "get indemnification against past and future problems if [he] make[s] the price right." *Id.* ¶ 108. Rogas came up with "Investor B." *Id.* ¶¶ 110, 113. Rogas said the transaction was "clear of any reps and warranties." *Id.* ¶ 111. On August 17, 2019, Rogas sent to Investor B "falsified financials" which "claimed NS8's ending balance in the Revenue Account on July 31, 2019 was over $17 million" when it was really "just over $12,000." *Id.* ¶ 114.

On August 19, 2019, "Korol sold all of his NS8 common stock, totaling 1,312,458 shares, to NS8 FP" (an entity wholly controlled by Rogas) for $6,221,182.17. *Id.* ¶ 112. On the same day, Investor B entered into an agreement with NS8 FP "whereby NS8 FP agreed to sell and issue to Investor B" shares "in the form of non-voting Preferred Units in exchange for $6,250,000." *Id.* ¶ 113.

The Instant Case

As noted, on November 22, 2022, the SEC filed an Amended Complaint against Korol (and others) for participating with Rogas in a fraudulent scheme in violation of Rule 10b–5(a) and (c), under Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b), 17 C.F.R. § 240.10b–5, and Section 17(a)(1) and (3) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. § 77q(a). Am. Compl. ¶¶ 132–33, 138–39. The SEC also alleges, among other things, that Korol violated the securities laws by "aiding and abetting" Rogas. *Id.* ¶¶ 141–45.

The SEC alleges, among other things, that Rogas participated in a fraudulent scheme and made materially untrue statements in violation of Rule 10b–5(a), (b), and (c) and Section 17(a)(1),

6

(2), and (3) of the Securities Act. *Id.* ¶¶ 128–30, 134–36. The SEC also alleges that Rogas violated Section 21F of the Exchange Act, and Rule 21F–17(a) thereunder, and 17 C.F.R. § 240.21F–17(a), by taking "action to impede the [whistleblower] Employee from communicating directly with the SEC staff about possible securities laws violations, including cutting off the Employee's access to NS8's IT systems and precluding the Employee from entering NS8's office building." *Id.* ¶¶ 146–48.

The SEC seeks "disgorgement" of the proceeds of alleged fraudulent activities from Korol, Rogas, and each Relief Defendant. *Id.* ¶¶ 153–54. "Defendant Rogas received at least $17.5 million in ill-gotten gains, Defendant Korol received at least $6.22 million in ill-gotten gains, and the Relief Defendants received illicit proceeds to which they have no legitimate claim." *Id.* ¶ 9. The SEC asks for a permanent injunction against Korol and Rogas enjoining them "from engaging in conduct of similar purport and object" and barring them "from acting as an officer or director of any issuer that has a class of securities registered pursuant to Section 12 of the Exchange Act, 15 U.S.C. § 78l, or that is required to file reports pursuant to Section 15(d) of the Exchange Act, 15 U.S.C. § 78o(d)." *Id.* at 34.

## II. <u>Analysis</u>

The SEC has unequivocally stated claims against Korol and dismissal would be inappropriate. *See e.g.*, Am. Compl. ¶¶ 77–81, 84–85, 91–97, 119, 132–33, 138–39, 141–45, 153–54; *see also SEC v. Farnsworth*, No. 22-cv-8226, 2023 WL 5977240, at *18 (S.D.N.Y. Sept. 14,

2023); *SEC v. Sequential Brands Grp., Inc.*, No. 20-cv-10471, 2021 WL 4482215, at *6 (S.D.N.Y. Sept. 30, 2021); *SEC v. Pentagon Cap. Mgmt. PLC*, 725 F.3d 279, 287 (2d Cir. 2013).

Federal Rule of Civil Procedure 12(b)(6)

"To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *SEC v. Hwang*, No. 22-cv-3402, 2023 WL 6124041, at *4, *9 (S.D.N.Y. Sept. 19, 2023) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *SEC v. GPL Ventures LLC*, No. 21-cv-6814, 2022 WL 158885, at *4, *10 (S.D.N.Y. Jan. 18, 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The Court must accept "all factual claims in the complaint as true" and draw "all reasonable inferences in the plaintiff's favor." *Set Cap. LLC v. Credit Suisse Grp. AG*, 996 F.3d 64, 75, 78 (2d Cir. 2021); *see also SEC v. Gallagher*, No. 21-cv-8739, 2023 WL 6276688, at *7, *13 (S.D.N.Y. Sept. 26, 2023).

Scheme Liability

The SEC provides for "scheme liability for those who, with scienter, engage in deceitful conduct." *SEC v. Wey*, 246 F. Supp. 3d 894, 915, 918 (S.D.N.Y. 2017). "Because scheme claims sound in fraud, they are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b)." *Plumber & Steamfitters Loc. 773 Pension Fund v. Danske Bank A/S*, 11 F.4th 90, 105 (2d Cir. 2021). "[A] plaintiff must specify 'what deceptive or manipulative acts were performed, which defendants performed them, when the acts were performed, and the effect the scheme had on investors in the securities at issue.'" *Id.* (quoting *In re Parmalat Sec. Litig.*, 383 F.

8

Supp. 2d 616, 622 (S.D.N.Y. 2005)). With respect to Korol, the SEC has alleged that he: "(1) committed a manipulative or deceptive act (2) in furtherance of the alleged scheme to defraud, (3) with scienter" in violation of Rule 10b-5(a) and (c) and Sections 17(a)(1) and (3) of the Securities Act. *SEC v. Sugarman*, No. 19-cv-5998, 2020 WL 5819848, at *5, *9 (S.D.N.Y. Sept. 30, 2020); *see* Am. Compl. ¶¶ 76–123, 90–97, 101–20.

Korol unsuccessfully challenges the sufficiency of the pleadings with respect to the first and third elements. He argues unpersuasively that the "SEC's allegations of fraud rely entirely on the false representations made by Rogas to investors" and not on "any inherently deceptive conduct." Korol's Mem. Supp. Mot. Dismiss ("MTD") 10, ECF No. 117. And, Korol unpersuasively argues that the fraud claims against him "must be dismissed for failure to comply with Rule 9(b)." *See* MTD at 24.

### Korol's Alleged Deceptive Conduct

To successfully plead that Korol "committed a manipulative or deceptive act," the complaint must "allege something beyond misstatements and omissions" such as "the 'dissemination of false or misleading statements with intent to defraud.'" *SEC v. Rio Tinto plc*, 41 F.4th 47, 53-54 (2d Cir. 2022) (quoting *Lorenzo v. SEC*, 139 S. Ct. 1094, 1100 (2019)). "[A] plaintiff may make out a scheme liability claim by identifying manipulative or deceptive acts grounded in alleged misrepresentations or omissions." *Sequential Brands Grp., Inc.*, 2021 WL 4482215, at *6; *see also SEC v. Fiore*, 416 F. Supp. 3d 306, 321 (S.D.N.Y. 2019).

The SEC clearly alleges that Korol undertook deceptive acts by, among other things, introducing investors to Rogas and arranging securities sales knowing that NS8 had "little money . . . left." Am. Compl. ¶¶ 76–80, 90–93, 101, 105; *see also Pentagon Cap. Mgmt.*, 725

F.3d at 286. Korol sought additional investors and transactions even after he became aware that (i) NS8 had a "mere[] $100,000 in NS8's Revenue Account"; (ii) that only some employees received "real data" about the NS8 sales team; and (iii) "[NS8] need[ed] revenue." Am. Compl. ¶¶ 79–97, 101, 105. All told, Korol initiated six distinct investor transactions when he "knew" or "should have known" that Rogas "was falsifying [the] revenue numbers." *Id.* ¶¶ 77–97, 120.

The SEC also clearly alleges that Korol engaged in "deceptive acts" when he sold "his shares of NS8." *Id.* ¶¶ 105–09, 120; *see SEC v. SeeThruEquity, LLC*, No. 18-cv-10374, 2019 WL 1998027, at *5 (S.D.N.Y. Apr. 26, 2019). Korol initiated this transaction around the time in November 2018 that Korol told Rogas that NS8 had "little money . . . left." Am. Compl. ¶¶ 80, 105–09, 120. Korol also worked with Rogas to conduct a "secondary offering" so that Early Investors could sell their NS8 stock in the summer of 2019, which was six months after Korol acknowledged that "our revenues are not correct." *Id.* ¶¶ 86, 100–04. During preparation for the secondary offering, Korol complained that "I don't want to know the numbers that are being given." *Id.* ¶ 102.[3]

These facts "make out a scheme liability claim by identifying manipulative or deceptive acts" with the particularity required by Federal Rule of Civil Procedure 9(b). *Sequential Brands Grp., Inc.*, 2021 WL 4482215, at *6; *see also SEC v. Fiore*, 416 F. Supp. 3d 306, 321 (S.D.N.Y. 2019).

---

[3] According to the Amended Complaint, Korol also appears to have taken steps to cover up and obstruct evidence of fraud. *See, e.g., id.* ¶¶ 56–67, 81, 85, 117–19.

*Scienter*

Korol asserts unpersuasively that the SEC's allegations of scienter are based on "text messages alone," and that they reflect "at most" an "unsubstantiated suspicion" that is "woefully insufficient to ple[a]d the required scienter." MTD at 21. Fraudulent intent may be alleged with respect to Rule 10b-5 using "facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Wey*, 246 F. Supp. 3d at 916 (quoting *Novak v. Kasaks*, 216 F.3d 300, 307 (2d Cir. 2000)). Recklessness is, "at the least, conduct which is 'highly unreasonable' and which represents 'an extreme departure from the standards of ordinary care . . . to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it.'" *Novak*, 216 F.3d at 308 (citation omitted). The SEC "need only allege that a defendant acted with negligence in order to plead violations" of Section 17(a)(3). *Id.* at 912.

The Amended Complaint is replete with facts from which Korol's scienter may be inferred. *See, e.g.*, Am. Compl. ¶¶ 78–80, 82, 87, 102, 105–14, 117–19. Korol attended a meeting in September 2018 where Rogas presented "significantly inflated" financial information. *Id.* ¶ 78. Another NS8 employee approached Korol afterwards to express "concerns" about "not know[ing] where Rogas's numbers were coming from and that Rogas's presentation seemed implausible." *Id.* ¶¶ 77–79. Korol explicitly told Rogas "I'm not going to be [there] on the Thursday investor update. **I don't want to know the numbers that are being given**" out. Am. Compl. ¶ 102 (emphasis added). "[T]he danger" of fraud was or should have been "so obvious," that Korol "must have been aware of it." *Novak*, 216 F.3d at 308. At best, Korol's "conscious avoidance of knowledge constitutes sufficient scienter under the federal securities laws." *SEC v. Credit Bancorp, Ltd.*, 195 F. Supp. 2d 475, 493 (S.D.N.Y. 2002).

11

In addition to contending that Korol acted recklessly, the Amended Complaint alleges facts sufficient to infer that Korol had actual knowledge of the fraud. *See* Am. Compl. ¶¶ 80–81, 84, 86. Referring to another NS8 employee, Korol told Rogas the employee "is only now getting real data about how bad these guys [NS8] are doing." *Id.* ¶ 81. Korol also said "What little money is left we might as well not flush it." *Id.* ¶ 80. Employees "don't know what our numbers are" but "[w]e need revenue." *Id.* ¶ 84. **"[E]verybody that been around [sic] for awhile [sic] knows our revenues are not correct."** *Id.* ¶ 86 (emphasis added).

Aiding and Abetting

The SEC has clearly and persuasively asserted claims against Defendant Korol for aiding and abetting Rogas in securities fraud. *See* Am. Compl. ¶¶ 27–71, 77–86, 90–93, 100–04, 109, 117–23; *Wilcox*, 663 F. Supp. 3d at 161; *City of Rochester*, 2024 WL 909475, at *10. Korol "knowingly or recklessly provide[d] substantial assistance" to Rogas. Am. Compl. ¶¶ 27–71, 77–86, 90–93, 100–04, 109, 117–23; 15 U.S.C. § 78t(e); *Sugarman*, 2020 WL 5819848, at *11–12. And, the SEC has alleged: (1) "the existence of a securities law violation by [Rogas]"; (2) Korol's intimate "knowledge of [Rogas's] violation"; and (3) "substantial assistance" to Rogas by Korol "in the achievement of the primary violation." *See* Am. Compl. ¶¶ 27–71, 77–86, 90–93, 100–04, 109, 117–23; *Gonnella v. SEC*, 954 F.3d 536, 550 (2d Cir. 2020) (quoting *SEC v. Apuzzo*, 689 F.3d 204, 211 (2d Cir. 2012)); *see also Hwang*, 2023 WL 6124041, at *18; *SEC v. Stone*, No. 22-cv-3553, 2023 WL 6387276, at *6–7 (S.D.N.Y. Sept. 29, 2023).

"Scienter and substantial assistance are to be considered in tandem, as 'a high degree of knowledge may lessen the SEC's burden in proving substantial assistance, just as a high degree of substantial assistance may lessen the SEC's burden in proving scienter.'" *Farnsworth*, 2023 WL

12

5977240, at *19–20 (quoting *Apuzzo*, 689 F.3d at 215). Here, Korol had at the very least a "general awareness" of Rogas's "illegal scheme." Am. Compl. ¶¶ 89–97; *Farnsworth*, 2023 WL 5977240, at *20. Moreover, Rogas directed Korol to "make the intros" with Potential Investors whom Korol had identified as interested investors. Am. Compl. ¶¶ 89–97. Rogas copied Korol on emails he sent to Potential Investors with "a slide deck that included false revenue numbers." *Id.* ¶¶ 93–97. An NS8 employee alerted Korol to the "implausib[ility]" of NS8's financial information. *See id.* ¶¶ 76–96.

The SEC has sufficiently alleged Korol was aware that NS8 had "little money" and a "mere[] $100,000 in NS8's Revenue Account," and that Korol knew that revenues "are not correct." *Id.* ¶¶ 76–87. Korol also knew Rogas fired a potential whistleblower; nevertheless, Korol "had a conversation with the Employee and encouraged the Employee not to disclose any information that would be harmful to NS8 or Rogas." *Id.* ¶¶ 117–19. The SEC has clearly alleged Korol's "high degree of actual knowledge." *Id.* ¶¶ 76–87; *SEC v. Ripple Labs, Inc.*, No. 20-cv-10832, 2022 WL 762966, at *9 (S.D.N.Y. Mar. 11, 2022).

The SEC's allegations that Korol provided substantial assistance to Rogas's fraudulent securities activities are more than sufficient. *See* Am. Compl. ¶¶ 77–86, 89–97, 105–16, 119; *SEC v. Contrarian Press, LLC*, No. 16-cv-6964, 2019 WL 1172268, at *9 (S.D.N.Y. Mar. 13, 2019); *Farnsworth*, 2023 WL 5977240, at *20. As noted, Korol actively participated with Rogas by introducing unwitting investors; helping to disseminate false statements; and raising money for NS8 based upon false financial information. Am. Compl. ¶¶ 84–87, 89–99, 100–04; *SEC v. Laura*, No. 18-cv-5075, 2023 WL 4238153, at *16 (E.D.N.Y. June 28, 2023).

Disgorgement

The Amended Complaint sufficiently alleges that Korol received "illicit proceeds" in the amount of "at least $6,221,182.17 as a result of [his] fraudulent conduct." Am. Compl. ¶¶ 126, 153–54. The SEC seeks disgorgement of "ill-gotten gains received during the period of violative conduct" and payment of "prejudgment interest on such ill-gotten gains." *Id.* ¶¶ 126, 153–54; *id.* at 34. Where, as here, "the SEC has sufficiently pled securities fraud claims, it may seek disgorgement of any 'illegally derived' proceeds it ultimately is able to prove." *Fiore*, 416 F. Supp. 3d at 332. The SEC alleges that Korol received ill-gotten funds from the sale of NS8 securities and to which Korol does not have a "legitimate claim." *See* Am. Compl. ¶¶ 106–14, 126, 153–54; *Stone*, 2023 WL 6387276, at *13.

## IV.   Conclusion & Order

For the foregoing reasons, Korol's motion to dismiss [ECF No. 115] is denied.

The Court will hold a status conference with the parties and principals on April 9, 2024 at 2 PM in Courtroom 17B.

Date: New York, New York
March 14, 2024

*RMB*
RICHARD M. BERMAN, U.S.D.J