```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
    UNITED STATES SECURITIES AND                :
    EXCHANGE COMMISSION,                        :
                                                :
                                                :
                                                :
                         Plaintiff,             :
             v.                                 :        DECISION & ORDER
                                                :
    ADAM P. ROGAS and PAUL G. KOROL,            :
                                                :        20-CV-7628 (RMB)
                         Defendants,            :
         and                                    :
                                                :
    NS8 FP, LLC, MVP 2020, LLC, and             :
    ROGASSI ENTERPRISES, LLC,                   :
                                                :
                         Relief Defendants.     :
-----------------------------------------------------------X
```

**I.      Introduction**

This Decision and Order resolves the Securities and Exchange Commission's ("SEC") motion, dated October 7, 2024, requesting the Court to enter a "permanent officer and director bar" against Adam P. Rogas ("Rogas"), following his conviction for securities fraud. SEC Motion, dated October 7, 2024, at 1. The defense argues in opposition, dated October 21, 2024, that an officer and director bar against Rogas be "no longer than five years." Def. Opp., dated Oct. 21, 2024, at 15.[1] The "Court shall determine the length of time of the Officer and Director Bar imposed upon [Rogas], upon motion of the Commission." Consent of Adam P. Rogas, dated March 7, 2024, at 4; *see also* Decision and Order, dated Dec. 2, 2024 (ECF No. 221).

The Court has reviewed the record herein including without limitation: (1) the SEC Motion

---

[1] On September 18, 2024, the Court entered an interim Judgment against Rogas which (on consent of the parties) prohibits Rogas "from acting as an officer or director of any issuer that has a class of securities registered pursuant to Section 12 of the Exchange Act or that is required to file reports pursuant to Section 15(d) of the Exchange Act." Judgment of Rogas, dated Sept. 18, 2024, at § IV.

which contends that "Rogas has demonstrated that he is unfit to ever again be entrusted with the role of an officer or director of a public company"; (2) Rogas' opposition which argues that "a limited bar for a term of five years is appropriate" because Rogas' conduct was "entirely aberrational" and he "had never engaged in nor been accused of any criminal activity, let alone securities misconduct"; (3) the SEC Reply, dated October 28, 2024, pointing out that "Rogas violated multiple securities laws multiple times, committing dozens of separate deceptive acts, . . . over the course of years, and only ceased his illegal conduct when caught."

The Court concludes, for the reasons set forth below, that Rogas be prohibited permanently from acting as an officer or director of any issuer that has a class of securities registered pursuant to Section 12 of the Exchange Act [15 U.S.C. § 78l] or that is required to file reports pursuant to Section 15(d) of the Exchange Act [15 U.S.C. § 78o(d)]. *See McCarthy v. SEC*, 406 F.3d 179, 188 (2d Cir. 2005) ("Exclusion from the securities business is a remedial device for the protection of the public.") (quoting *Assoc. Sec. Corp. v. SEC*, 283 F.2d 773, 775 (10th Cir. 1960)); H.R. Rep. No. 101-616, at 13 (1990) (Officer and director bars are "intended to protect public investors from persons who have already demonstrated, by engaging in deliberate fraudulent conduct, that they should not be entrusted with power over investor funds."); *SEC v. Palmisano*, 135 F.3d 860, 866 (2d Cir. 1998) ("[T]he deterrence of securities fraud serves other important non-punitive goals, such as encouraging investor confidence, increasing the efficiency of financial markets, and promoting the stability of the securities industry.").[2]

---

[2] **Any issues or arguments raised by the parties but not specifically addressed in this Decision & Order have been considered by the Court and rejected.**

2

II.     **Background**

**Rogas Convicted of Securities Fraud**

On March 16, 2022, Rogas pled guilty to one count of securities fraud pursuant to a plea agreement, dated March 15, 2022. Plea Hr'g Tr., 20-CR-539, dated Mar. 16, 2022, at 37:4–6 (Crim Doc. 59); *see also* Judgment of Conviction, dated Nov. 9, 2022, at 1 (Crim Doc. 80).

Rogas, co-founder, President, and CEO of a technology company NS8, Inc., admitted that he made "material misrepresentations to potential and actual investors of NS8 inaccurately reflecting the company's revenue" from January 2018 to June 2020. *Id.* at 11:12, 12:4, 21:7–10.[3] Rogas acknowledged that he "used materially misleading financial statements to raise approximately $123 million from investors of NS8 [in 2019] . . . . [He] altered bank statements to show millions of dollars of fictional customer revenue and assets. . . . [He] directly benefited when NS8 conducted a tender offer with . . . new investor[s]." Rogas Sent'g Letter, dated Apr. 24, 2022 (Crim Doc. 67). Rogas profited $17.5 million from his fraudulent conduct. *See* Sent. Tr., dated Nov. 3, 2022, at 72:13–14 (Crim. Doc. 81).

---

[3] **Paul G. Korol**, who co-founded NS8 with Rogas, "participated in and helped perpetrate Rogas's fraud," but (unlike Rogas) was not indicted on criminal charges. Am. Compl. at ¶ 5. Korol, "without admitting or denying the allegations of the Complaint," entered into a civil agreement with the SEC which included, among other things, "disgorgement of $1,1150,000," "prejudgment interest . . . in the amount of $137,377.37," and "a civil penalty in the amount of $189,427." Final Judgment of Korol, dated Sept. 18, 2024, at § III. Korol also agreed to an officer and director bar for a period of three years. *Id.* at § IV. Korol is further discussed on pages 5–7 below.

**David Hansen**, who also co-founded NS8 with Rogas and Korol, reached a settlement in SEC administrative proceedings after the SEC found that Hansen "violated Rule 21F-17(a) of the Exchange Act." Order, dated April 12, 2022, *In re David Hansen*, SEC Admin. Pro. No. 3-20820, at 4. No criminal charges were brought against Hansen, and Hansen was not included as a defendant in the instant matter. Hansen, "without admitting or denying the [SEC's] findings," agreed to "pay a civil money penalty in the amount of $97,523" and also to "cease and desist from committing or causing any violations or future violations of Rule 21F-17(a)." *Id.* at 4. Hansen is discussed further on pages 4–5 and 8 below.

On November 3, 2022, Rogas was sentenced for securities fraud to 60 months' imprisonment followed by three years of supervised release. *Id.* at 78:7–14; *see also* Judgment of Conviction, dated Nov. 9, 2022 (Crim Doc. 80). Rogas was also required to forfeit $17,542,459.00 and to pay restitution in the amount of $112,276,409.50. *See* Order of Restitution, dated Dec. 9, 2022, at 1 (Crim. Doc. 88); Order of Forfeiture, dated Aug. 9, 2023, at 1 (Crim. Doc. 93).

### Rogas Inflated NS8's Revenue by Falsifying Bank Account Statements

Beginning in 2018 and continuing through the summer of 2020, Rogas "defrauded NS8 investors in various securities offerings by falsifying NS8's bank statements to give the appearance that NS8 was generating millions of dollars in customer revenue with tens of millions of dollars of assets on hand." Am. Compl., dated Nov. 22, 2022, at ¶ 31. In reality, NS8 "had just over $28,000." *Id.* The falsified bank statements were approved by Rogas and sent to NS8's finance department on a monthly basis and were support for the NS8's financial statements. *See id.* at ¶¶ 29, 31. "The falsified bank statements and the false financial statements were . . . disseminated both internally at NS8 and externally, including to current and prospective investors." *Id.* at ¶ 31.

### Rogas Retaliated against a Whistleblower

In 2018 and early 2019, an NS8 employee ("whistleblower") "raised concerns internally that NS8 was overstating its number of paying customers." *Id.* at ¶ 57. On July 11, 2019, the whistleblower "submitted an anonymous tip to the SEC explaining that NS8 and Rogas may have overstated its number of paying customers and its revenues, and that the incorrect numbers may have been used in a securities offering." *Id.* at ¶ 58. On August 9, 2019, the whistleblower raised these concerns directly with David Hansen ("Hansen"), who was a co-founder of NS8, and "at various points, served as its Managing Director of Technical Operations and Strategy, Chief of Staff, and Chief Information Officer." *See* Order, dated April 12, 2022, *In re David Hansen*, SEC Admin. Pro. No. 3-20820, at ¶ 1. The whistleblower stated to Hansen that he would report the

misconduct to "investors, customers, and any other interested parties." Am. Compl. at ¶ 59. On the same day, Rogas received an urgent call from Hansen informing Rogas of the conversation he had with the whistleblower. *See id.* at ¶ 7. "The next day, Rogas and [Hansen] accessed the whistleblower's computer, which was then used to access the whistleblower's personal accounts—accounts that contained correspondence between the whistleblower and his attorney who had assisted him in reporting to the SEC." SEC Motion at 7–8 (citing Am. Compl. at ¶¶ 63–67). On August 15, 2019, Rogas fired the whistleblower presumably "in retaliation for reporting [Rogas] to the SEC." Am. Compl. at ¶ 71.

**Rogas Continued Fraudulent Conduct Even After He Received Subpoenas from the SEC**

According to the SEC, "Rogas's brazen, deceptive conduct continued even after the SEC contacted NS8." *Id.* at ¶ 8. The SEC issued subpoenas to Rogas and to NS8 in connection with its investigation into fraud at NS8. *Id.* at ¶ 72. "Despite being on notice that the SEC was investigating potential fraud at NS8, Rogas continued to alter bank statements," according to the SEC, until at least June 2020. *Id.* at ¶ 73.

**Paul G. Korol**

Paul G. Korol ("Korol"), who was aged 56 when the Amended Complaint was filed, co-founded NS8 with Rogas in 2016. *See id.* at ¶ 13. Korol also served on NS8's Board of Directors. *Id.* "At NS8's founding . . . , Korol purchased 1,693,125 shares of the company for $0.0001/share, or $169.31 total." *Id.*

The SEC alleges that "[b]y at least September 2018, Korol knew or was reckless in not knowing . . . that NS8's revenue and financial information, including information shared with potential investors, were false." *Id.* at ¶ 76. The SEC also uncovered incriminating messages

between Korol and Rogas:

- On October 3, 2018, Korol messaged Rogas the following: "What little money is left we might as well not flush it[.] Anyway they can do what they want[.] I don't care[.] I know it's all about spending as much as we can to look like a 9.8 arr [annual recurring revenue] company [expletives]." *Id.* ¶ 80.

- On December 5, 2018, Korol texted Rogas about an investor who was "all over the numbers" and "called bull[expletive] the growth is to [sic] perfect they [sic] line is smooth." *Id.* ¶ 85. Rogas replied "we are ok." *Id.* Korol responded "They literally might go after our text" and "Can u erase everything." *Id.*

- On January 22, 2019, Korol messaged Rogas that "everybody that [has] been around [sic] for awhile [sic] knows our revenues are not correct" "Everybody." *Id.* ¶ 86. Rogas responded: "I know that." *Id.*

The SEC does not allege that Korol participated directly in falsifying NS8 bank statements. *See id.* at ¶ 4. Only Rogas had access to the bank accounts which reflected fraudulent bank statements. *See id.* No criminal case was brought against Korol. The SEC does allege that, despite knowing that the revenue numbers were falsified, Korol "solicited numerous potential investors for NS8, and assisted in a secondary offering." *Id.* The SEC alleges that, "in October 2018, Korol attended a trade show called 'Money2020' on behalf of NS8. . . . While at Money2020, Korol solicited numerous potential investors, who he then introduced to Rogas, who provided them with falsified revenue information." *Id.* at ¶¶ 89–90. On October 23, 2018, Korol wrote to Rogas that "[a]nother company is interested in investing. Had a good convo. . . . [A potential investor] wants investment info . . . ." *Id.* at ¶ 91.

"Korol and Rogas devised a scheme for Korol to offload [Korol's] shares in NS8 in a transaction funded by a third-party investor." *Id.* at ¶ 6. "Beginning in late 2018, . . . Korol asked Rogas on multiple occasions to find an investor to purchase Korol's NS8 shares." *Id.* ¶ 105. Korol urged that he "get indemnification against past and future problems if [he] make[s] the price right."

*Id.* ¶ 108. On August 19, 2019, Korol sold all of his 1,312,458 shares of NS8 common stock for $6,221,182.17, to NS8 FP which was an entity wholly controlled by Rogas. *See id.* ¶ 112.

The SEC included Korol as a defendant in this civil case on November 22, 2022. *See* Motion to Amend Compl., dated Sept. 30, 2022, at 1; Am. Compl., dated Nov. 22, 2022. The Amended Complaint "add[ed] additional factual allegations as to Mr. Rogas" and "add[ed] a new defendant, Paul Korol." Motion to Amend Compl., at 1. The SEC "amend[ed] the complaint to add additional facts, claims, and relief based on its continuing investigation into Mr. Rogas's egregious misconduct." *Id.* at 4.

Following discovery, Korol reached a settlement with the SEC, *see* Consent of Defendant Paul G. Korol, dated June 28, 2024, and the Court entered a Final Judgment against Korol on September 18, 2024 which stated: "[W]ithout admitting or denying the allegations of the Complaint," Korol agreed to "liabl[ity] for disgorgement of $1,150,000," which "represent[s] net profits gained as a result of the conduct alleged in the complaint." Final Judgment of Korol, dated Sept. 18, 2024, at § IV. Korol also accepted liability for "prejudgment interest . . . in the amount of $137,377.37" and he accepted liability for "a civil penalty in the amount of $189,427." *Id.* Korol also agreed that disgorgement, prejudgment interest, and civil penalties would be "applied towards the restitution ordered in *United States v. Adam P. Rogas*, Crim. No. 20-00539 (SDNY)." Consent of Defendant Paul G. Korol at ¶ 3.

Korol was also "permanently restrained and enjoined from violating, directly or indirectly, Section 10(b) of the Securities Exchange Act of 1934 . . . and Rule 10b-5 promulgated thereunder" as well as "Section 17(a) of the Securities Act of 1933." Final Judgment of Korol at §§ I, II. He also consented to a bar from acting as an officer or director of any public company for a period of three years. *Id.* at § III.

7

### David Hansen

As discussed above, David Hansen was also a co-founder of NS8 who, "at various points, served as its Managing Director of Technical Operations and Strategy, Chief of Staff, and Chief Information Officer." Order, dated April 12, 2022, *In re David Hansen*, SEC Admin. Pro. No. 3-20820, at 2. The SEC commenced administrative proceedings against Hansen for "violat[ing] Rule 21F-17(a) of the Exchange Act" which requires that no person may "take any action to impede an individual from communicating directly with the Commission staff about a possible securities law violation." *Id.* at 2, 4.

The SEC found that, in August 2019, the NS8 whistleblower raised his concerns to Hansen that "NS8 may have falsely inflated customer counts." *Id.* at 2–3. Shortly thereafter, Hansen messaged Rogas as follows: "please call me ASAP. This is EXTREMELY URGENT." *Id.* at 3. Hansen and Rogas spoke and "both took steps to remove [the whistleblower's] access to NS8's IT systems." *Id.* Later that week, Rogas fired the whistleblower. *See id.* at 4.

Hansen, "without admitting or denying the findings," entered into a settlement with the SEC. *Id.* at 1. Hansen agreed with the SEC that he "pay a civil money penalty in the amount of $97,523." *Id.* at 4. Hansen also agreed to "cease and desist from committing or causing any violations or future violations of Rule 21F-17(a)." *Id.* at 4.

### III. Legal Standard

Officer and director bars are "intended to protect public investors from persons who have already demonstrated, by engaging in deliberate fraudulent conduct, that they should not be entrusted with power over investor funds." H.R. Rep. No. 101-616, at 13 (1990). **"Exclusion from the securities business is a remedial device for the protection of the public."** *McCarthy*

*v. SEC*, 406 F.3d 179, 188 (2d Cir. 2005) (quoting *Assoc. Sec. Corp. v. SEC*, 283 F.2d 773, 775 (10th Cir. 1960)) (emphasis added).

"[A] district court may . . . exercise[] its 'substantial discretion' in deciding whether to impose the bar and, if so, the duration, so long as any bar imposed is accompanied with some indication of the factual support for each factor that is relied upon." *SEC v. Bankosky*, 716 F.3d 45, 48–49 (2d Cir. 2013).

"[T]he court may prohibit, conditionally or unconditionally, and permanently or for such period of time as it shall determine, any person who violated [Section 17(a)(1) of the Securities Act or Section 10(b) of the Exchange Act] from acting as an officer or director of any issuer that has a class of securities registered pursuant to section 78l of this title [Section 12 of the Exchange Act] or that is required to file reports pursuant to section 78o(d) of this title [Section 15(d) of the Exchange Act] if the person's conduct demonstrates unfitness to serve as an officer or director of any such issuer." 15 U.S.C. §§ 77t(e), 78u(d)(2).

The Second Circuit has outlined six (so-called) *Patel* factors as "useful in making the unfitness assessment," including: "1) the egregiousness of the underlying securities law violation; (2) the defendant's repeat offender status; (3) the defendant's role or position when he engaged in the fraud; (4) the defendant's degree of scienter; (5) the defendant's economic stake in the violation; and (6) the likelihood that misconduct will recur." *SEC v. Patel*, 61 F.3d 137, 141 (2d Cir. 1995). A court "consider[s] whether a conditional bar (e.g., a bar limited to a particular industry) and/or a bar limited in time (e.g., a bar of five years) might be sufficient, especially where there is no prior history of unfitness." *Id.* at 142.

9

IV.  **Analysis**

    A.  ***Patel* Factors**

        *1.  Rogas' Misconduct was Egregious*

Without doubt, Rogas' violations of the securities laws were egregious.[4] Rogas, in his role as CEO of NS8, engaged in flagrant and deliberate securities fraud by falsifying bank statements and providing false numbers to investors for over nearly two and a half years and during at least three securities offerings that raised approximately $149 million from investors. *See* Am. Compl. at ¶ 2. Although Rogas received a significant salary of between $268,000 to $422,000 from 2018 to 2020, he nevertheless sought and obtained $17.5 million of fraud proceeds, i.e., in addition to his substantial compensation. *See* Am. Compl. at ¶ 2; *see also* Presentence Investigation Report, 20-cr-539, dated June 28, 2022, at 18; *SEC v. Shkreli*, 15-cv-7175 (KAM) (JRC), 2022 WL 541792, at *11 (E.D.N.Y. Feb. 23, 2022) (finding violations to be egregious and imposing a permanent bar against a first time offender where the defendant "told a series of flagrant, intentional falsehoods, including regarding the assets under management [], misrepresenting that his struggling hedge funds were exceptionally successful, and hiding losses in order to manipulate individual and public investors for his benefit.").

Rogas knowingly provided falsified bank statements to NS8's finance department every month from January 2018 to June 2020. *See* Am. Compl. at ¶¶ 29–30. He knew that the bank statements were inaccurate and would be the basis for false NS8 financials. *See id.*; *SEC v. Subaye, Inc.*, 13-cv-3114 (PKC), 2014 WL 4652578, at *2 (S.D.N.Y. Sept. 18, 2024) (the defendant's misconduct was found to be "egregious" and the court imposed a lifetime bar where the defendant

---

[4] Even Rogas' Opposition acknowledged that his conduct was "admittedly significant." Def. Opp. at 10.

"drafted and signed numerous SEC filings that contained substantial misrepresentation of [the company's] financial condition, reporting . . . millions of dollars of revenues" when "[i]n reality, the company had . . . $200,000 in cash"). Rogas' falsified bank statements gave "the appearance that NS8 was generating millions of dollars in customer revenue with tens of millions of dollars of assets on hand." Am. Compl. at ¶ 1, *see also id.* at ¶ 31. In reality, NS8 "had just over $28,000." *Id.* at ¶¶ 1, 31.

Mr. Rogas' also engaged in egregious actions by, for example, attempting to hide his fraud proceeds. *See* Letter from the Gov't to the Honorable John P. Cronan, 20-cr-539, dated Oct. 28, 2022 (Crim. Doc. 85). The October 2022 letter shows that "Mr. Rogas was motivated by a desire to hide the money he received from NS8's tender offer." *Id.* at 2. Rogas "purchase[d] [a] Dominican Residence as a means of hiding assets, [and] he also took other assets to the Dominican Republic in order to move them offshore." *Id.* The Government's October 2022 letter includes text messages which Rogas exchanged with "Associate-1":

> **Associate-1:** Casino on cable. one of my fav movies and gotta be one of urs right? The fkn cars, suits, and casinos are
>
> **Rogas:** Love that movie
>
> **Associate-1:** Can't imagine how much I'd love it if I was from LV
>
> **Associate-1:** They just did that part where he takes the jet to LA and **stashes all the pay off money. Very parallel with ur DR trip lol**

*Id.* (emphasis added).

And, even after his arrest, Rogas "spent money (in violation of a freeze order issued by the Honorable Paul A. Crotty) to purchase numerous luxury items." Gov't Letter to Judge Cronan, dated Oct. 14, 2022, at 4 (Crim. Doc. 70). The luxury items included approximately "$100,000 spent on a swimming pool"; "$16,000 sent to the company that owns the Las Vegas National

11

Hockey League Team, presumably for hockey tickets"; "$9,450 spent on tickets for events at the University of Las Vegas"; "$4,000 spent for a garden fountain"; and "[s]ubstantial sums spent at restaurants, including approximately $1,000 spent on one day at a Japanese restaurant." *Id.* at 6.

The Government points out that Rogas' "post-arrest conduct puts the lie to Rogas's claim that his crime was an isolated 'mistake.'" *Id.*

### 2. *Repeat Offending*

The term "repeat offender" means "someone who has committed separate violations of securities laws in the past." *SEC v. Bankosky*, 12-cv-1012 (HB), 2012 WL 1849000, at *2 (S.D.N.Y. May 21, 2012). What Rogas did on a systematic and repetitive basis (monthly) was to "falisif[y] bank account statements for the account into which NS8's revenues were deposited and sent these falsified bank statements purporting to show revenue to NS8's finance department . . . where they were used to prepare NS8's financial statements." Am. Compl. at ¶ 3. The SEC contends that, while Rogas' fraudulent conduct occurred repeatedly and over a period of more than two years, Rogas is not (technically) a "repeat offender" as he has not previously been prosecuted for violating the securities laws. *Id.* at 11; *SEC v. Subaye, Inc.*, 13-cv-3114 (PKC), 2014 WL 4652578 (S.D.N.Y. Sept. 18, 2014) (where the court imposed a permanent bar against a defendant who showed "past disregard for a legal bar" and there was "a likelihood for recurrence of misconduct if [the defendant were] not permanently barred"); *SEC v. Shkreli*, 15-cv-7175 (KAM) (JRC), 2022 WL 541792, at *11 (E.D.N.Y. Feb. 23, 2022) (where the court imposed a permanent bar notwithstanding that the defendant was not a "'repeat offender' as the term is applied in the Second Circuit," principally because the defendant's fraudulent conduct occurred "over a period of more than four years"). Rogas' crime entailed falsely inflating the company's reported revenue

and assets by significant amounts months after months over a period of two and a half years. *See* Am. Compl. at ¶¶ 28, 31.

### 3. *Rogas was the Company's CEO When He Engaged in Fraud*

Rogas was Chief Executive Officer of NS8. During his tenure, Rogas falsified NS8 bank records and offered the falsified bank records and financial statements to investors. *See* SEC Motion at 12. Rogas had "ultimate authority" over the falsified bank statements and the NS8 financial statements. *See* Am. Compl. at ¶ 55; *see also SEC v. Subaye, Inc.*, 13-cv-3114 (PKC), 2014 WL 4652578, at *2 (S.D.N.Y. Sept. 18, 2014) (where the court imposed a permanent bar and found that the defendant's "role in the fraud was substantial: as the CFO of the company, [defendant] was primarily responsible for ensuring the accuracy of the SEC filings he drafted and signed"); *SEC v. Shkreli*, 15-cv-7175 (KAM) (JRC), 2022 WL 541792, at *11 (E.D.N.Y. Feb. 23, 2022) (the court found that "[t]he imposition of a lifetime bar . . . is in the interest of the investing public" when the defendant was "founder and CEO of Retrophin, the public company he defrauded").

### 4. *Rogas' Misconduct Involved a High Degree of Scienter*

Rogas "acted with an exceptionally high degree of scienter." SEC Motion at 11. He intentionally altered NS8's bank statements "not by mistake or accident." *Id.* He did so for 30 months. *See* Am. Compl. at ¶ 43; *see also SEC v. Zubkis*, No. 97-cv-8086 (JGK), 2000 WL 218393, at *10 (S.D.N.Y. Feb. 23, 2000) (where the court imposed a permanent ban when the defendant "knowingly orchestrated a securities fraud that netted several million dollars and from which he stood to profit personally").

Rogas pled guilty to securities fraud and admitted that he "acted knowingly, willfully, and with an intent to defraud." Plea Hear'g Tr., 20-cr-539, dated Mar. 16, 2022, at 12:12, 12:21-22;

*see SEC v. Gupta*, 11-cv-7566 (JSR), 2013 WL 3784138, at *4 (S.D.N.Y. July 17, 2013) (the court had "no trouble concluding . . . that [the defendant] is permanently unfit to serve as an officer or director of any public company" where the defendant "engaged in insider trader knowingly, willfully, and with intent to defraud"); *SEC v. Shkreli*, 15-cv-7175 (KAM), 2022 WL 541792, at *7 (E.D.N.Y. Feb. 23, 2022) (the court imposed a permanent bar and found that the defendant "acted with scienter with respect to [] the material misrepresentations and/or omissions he made to investors").

### 5. *Rogas Had a Very Lucrative Economic Stake in Falsified Financials*

"There can be no dispute that Rogas had an enormous economic stake in his misconduct." SEC Motion at 12. Rogas "pocketed at least $17.5 million of the [defrauded] investor funds." Am. Compl. at ¶ 2; *see SEC v. Robinson*, 00-cv-7452 (RMB) (AJP), 2002 WL 1552049, at *5 (S.D.N.Y. July 16, 2002) (where the court imposed a permanent officer and director bar and found that the defendant's "economic stake in the violation is manifest" when he received "over $260,000 in company 'loans'" and "obtained at least $400,000 from investors"); *SEC v. Shkreli*, 15-cv-7175 (KAM), 2022 WL 541792, at *8 (E.D.N.Y. Feb. 23, 2022) (imposing a permanent bar where the defendant "misappropriated approximately $120,000 . . . for his personal benefit" and also "misappropriated approximately $900,000 of investor funds . . . to fund [a] settlement").

### 6. *There is a Reasonable Likelihood that Rogas' Misconduct will Recur*

In determining "reasonable likelihood" of future violations, courts apply their judgment after considering "the egregiousness of the defendant's actions; the isolated, recurrent, or systematic nature of the violations; the degree of scienter involved; the [defendant's] recognition of the wrongfulness of the conduct; and the likelihood that the [defendant's] customary business activities will present opportunities for future violations." *Id.* at *9.

The *Patel* considerations support a finding that Rogas is likely to recidivate in the future. *See SEC v. Softpoint, Inc.*, 958 F. Supp. 846, 867 (SS) (S.D.N.Y. 1997) (where the court found "a reasonable likelihood of recurrent violations" when the defendant's "profession would give him numerous opportunities to commit future violations," he "flouted the law by continuing his misconduct throughout the SEC's investigation," and he had a "long and continuing pattern of misconduct"). The Court has already found (herein) that Rogas' conduct was egregious, his fraud over 30 months was recurrent and systematic in nature, and that his actions were committed with a high degree of scienter. *See* Section IV.A.1 & IV.A.4; *SEC v. Adelphia Comm'n Corp.*, 02-cv-5776 (PKC), 2006 WL 8406833, at *16 (S.D.N.Y. Nov. 16, 2006) (the court imposed a permanent bar where a strong likelihood existed that violations would recur because the "unlawful conduct reoccurred multiple times over a period of years"). Rogas' violations were "not an isolated incident." SEC Motion at 12. "Over nearly two and a half years, Rogas altered NS8 bank statements every month and repeatedly and intentionally provided falsified documents to investors in connection with raising nearly $150 million in three **separate** securities offerings." *Id.* at 12–13 (emphasis added); *see* Am. Compl. at ¶¶ 1–2; *SEC v. Shkreli*, 15-cv-7175 (KAM), 2022 WL 541792, at *10 (E.D.N.Y. Feb. 23, 2022) (finding that the defendant's **"past unlawful conduct, which has shown a manifest disregard for the investing public, regulatory mechanisms, and this country's securities laws, reasonably leads this Court to infer there is a likelihood of future violations"**) (emphasis added).

B.        **A Permanent Officer and Director Bar is Necessary**

This Court finds, following its analysis of the *Patel* factors, that a permanent bar is needed in order to protect the public, deter further misconduct, and lend confidence to the public and the financial markets. *See SEC v. Shkreli*, 2022 WL 541792, at *11 ("The imposition of a lifetime bar

15

. . . is in the interest of the investing public."); *see also In re Howard F. Rubin*, 58 S.E.C. Docket 1426, 1994 WL 730446, at *1 (Dec. 30, 1994) (The purpose of imposing an officer and director bar against a person is "to protect the public from future harm at his or her hands."); *SEC v. SeeThruEquity,* 18-cv-10374 (LLS), 2022 WL 171196, at *4 (S.D.N.Y. Jan. 19, 2023) (officer and director bars "deter further misconduct and protect the public").

A permanent bar "is especially appropriate in cases [such as this one] in which a defendant has engaged in fraudulent conduct while serving in a corporate or other fiduciary capacity." *SEC v. Drexel Burnham Lambert Inc.*, 837 F. Supp. 587, 613 (S.D.N.Y. 1993) (quoting S. Rep. No. 101–337, 1990 WL 263550, at 22 (1990)). "[S]hareholders may lack sufficient control to remove securities law violators from office or otherwise protect their own interests." *Id.* And, "broader public concerns are involved when the actions of the violator undermine the integrity of the markets." *Id.*

Prior to imposing a permanent bar, the court considered whether a conditional bar (e.g., a bar limited to a particular industry) and/or a bar limited in time (e.g., a bar of five years) might be sufficient. *See Patel*, 61 F.3d at 142. A limited bar would not be sufficient here. Even if Rogas may be deemed a first time offender, "every other *Patel* factor weighs in favor of the imposition of a permanent officer director bar." *Shkreli*, 2022 WL 541792, at *11. Rogas as the CEO of NS8 conducted "brazen, deceptive conduct" each month over the course of two and a half years. *See* Am. Compl. at ¶ 1. Rogas' conduct demonstrates a "prevailing inclination," *Shkreli*, 2022 WL 541792, at *11, to place his own self-interest ahead of the interests of his investors and the public. *See Gupta*, 2013 WL 3784138, at *4. And, Rogas will be relatively young (48 years old) when he is released from prison. *See* SEC Motion at 4. Age is "concerning to the Court, because a limited

bar of five or ten years, for example, would not sufficiently protect the public from [the defendant's] likelihood of future violations." *Shkreli*, 2022 WL 541792, at *11.

In *SEC v. Shkreli*, 2022 WL 541792 (E.D.N.Y. Feb. 23, 2022), the court found that the imposition of a lifetime bar was "in the interest of the investing public." *Id.* at *11. In *Shkreli*, the defendant "repeatedly made material misrepresentations and omissions to multiple investors and prospective investors" and "misappropriated funds." *Id.* at *4. Here, Rogas, over the course of 30 months, provided fraudulent bank and financial statements to investors and prospective investors as part of at least three securities offerings. *See* Am. Compl. at ¶ 2. He received an enormous windfall ($17.5 million) from those investor funds. *Id.* The defendant in *Shkreli*, who was the founder and CEO of his company, had "dissipated nearly the entirety of [the company's] funds through trading losses and misappropriations," but the defendant "email[ed] performance estimates to investors . . . reporting profitable investments, reflecting outright lies." *Id.* at *5. The defendant in *Shkreli* was sentenced in a "parallel criminal proceeding" to "eighty-four months in prison and three years of supervised release." *Id.* at *9. The court also found that "a limited bar of five or ten years would not sufficiently protect the public" given the defendant's "relatively young age" (37) and the fact that the defendant's "conduct demonstrates a persistent, prevailing inclination to place his own 'self-interest ahead of' the interest of his investors . . . ." *Id.* at *11.

In *SEC v. Gupta*, 11-cv-7566 (JSR), 2013 WL 3784138 (S.D.N.Y. July 17, 2013), the court had "no trouble concluding" that the defendant was "permanently unfit" to serve as an officer or director, even though "the criminal conviction of insider trading that form[ed] the basis of [the defendant's] civil liability [was] his first conviction." *Id.* at *4. The court observed that the defendant engaged in his violations "knowingly, willfully, and with intent to defraud." *Id.* The court also found that the defendant's conduct "'betray[ed] an impulse to place self-interest ahead

17

of his employer's and its shareholders' interests and further demonstrates unfitness to serve as a corporate fiduciary.'" *Id.* (quoting *Bankosky*, 2013 WL 1955809, at *4). Similarly, in this case, the Court finds that "the strength of the remaining *Patel* indicators" support the conclusion that Rogas is "permanently unfit to serve as an officer or director of any public company." *Id.*

And, in *SEC v. Robinson*, 00-cv-7452 (RMB) (AJP), 2002 WL 1552049 (S.D.N.Y. July 16, 2002), this Court granted the SEC's request for a permanent officer and director bar, principally because the Court "believe[d] that given the egregiousness of [the defendant]'s actions . . . a permanent bar is appropriate." Among other things, defendant Robinson "obtained at least $400,000 from investors by fraudulently inducing them to purchase stock in [his company] through false and misleading offering material on the internet and in national advertisements." *Id.* at *1. Robinson "was the sole driving force behind the scheme to defraud investors" and he "was an officer and director [of the company] during the relevant period." *Id.* at *5. Robinson was "'highly culpable' in 'knowingly' authoring 'flagrant' and 'outrageous' misrepresentations.'" *Id.*

## V. Conclusion & Order

For the foregoing reasons, the Court grants the SEC's Motion, dated October 7, 2024, and orders and directs that, effective immediately, Adam P. Rogas is permanently barred from serving as an officer or director of any issuer that has a class of securities registered pursuant to Section 12 of the Exchange Act [15 U.S.C. § 78l] or that is required to file reports pursuant to Section 15(d) of the Exchange Act [15 U.S.C. § 78o(d)] because "a permanent [] bar is both necessary and in the public interest." *SEC v. Gupta*, 11-cv-7566 (JSR), 2013 WL 3784138, at *4 (S.D.N.Y. July 17, 2013).

Date: December 12, 2024  
New York, New York

_____  
RICHARD M. BERMAN, U.S.D.J.